WILLIAM F. KUSTKA AND SHARON KUSTKA, HIS WIFE, PLAIN-
TIFFS–APPELLANTS, v. ROBERT J. BATZ, INDIVIDUALLY
AND TRADING AS BLAINE TERMITE CONTROL; ABRAHAM
J. FELDMAN AND ANNELIESE FELDMAN, HIS WIFE;
HOUSE CHEK, INC. AND JOHN MULLER, DEFENDANTS,
AND WEICHERT REALTORS, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted October 24, 1989—Decided November 6, 1989.

Before Judges ANTELL, BILDER and ASHBEY.

*Smith and Fenmore,* attorneys for appellants (*Arthur T. Smith,* Jr., on the brief).

*Broderick, Newmark, Grather & Aspero,* attorneys for respondent Weichert Realtors (*Alan J. Baldwin,* on the brief).

The opinion of the court was delivered by

BILDER, J.A.D.

On this appeal we are asked to examine the relationship between settlement, comparative negligence and the principles of joint and several liability. Also involved is the effect of a judgment entered on the record by the court on a form of negligence judgment prepared by counsel which does not *in haec verba* provide for joint and several liability.

The discovery of termites in their newly purchased home led plaintiffs William and Sharon Kustka to litigation which eventuated in a jury verdict of negligence apportioned as follows: Defendant Blaine Termite Control and its principal Robert Batz (Blaine) 60%; defendant Weichert Realtors (Weichert) 20%; defendant House Chek, Inc. and its principal John Muller (House Chek) 20%. Damages had been stipulated to be $112,-500, thus the proportionate shares were defendant Blaine $67,-500; defendant Weichert $22,500; and defendant House Chek $22,500. During trial, defendant Blaine settled for $110,000. The remaining defendants' liability for their full $22,500 share was unaffected. *See Rogers v. Spady,* 147 *N.J.Super.* 274, 277, (App.Div.1977).

Although *R.* 4:47 requires that the clerk enter the judgment, plaintiffs' counsel prepared a form of order which set forth the

individual judgments without any reference to joint and several liabilities. It was entered by the court without objection. Shortly thereafter, an amended order was entered that, as relevant here, repeated the same judgments. As a result of appeals and cross-appeals, the judgments were, for the nonce, given little more thought.

After we affirmed the trial result, plaintiffs sought to collect on their judgments. Defendant Weichert offered its $22,500 together with accumulated interest. Because the judgment against defendant House Chek was apparently uncollectible, plaintiffs demanded twice that amount from Weichert, claiming they were entitled to do so by virtue of *N.J.S.A.* 2A:15–5.3, which creates joint and several liability. They therefore sought to modify the orders for judgment entered by the trial judge some two years before so as to explicitly provide for joint and several liability.

First plaintiffs unsuccessfully sought to correct the judgment pursuant to *R.* 1:13–1. Their effort was rebuffed on the ground the order had been entered by the trial judge—it was not a "clerical error." Then they sought to amend the judgment pursuant to *R.* 4:50–1.

Weichert successfully resisted, contending that applications for relief from mistakes, *R.* 4:50–1(a), must be made within one year, *R.* 4:50–2. Moreover, it claimed it had assumed from plaintiffs' form of judgment they were waiving their right to claim joint and several liability and that it made strategic appellate decisions based upon that belief. The trial judge found Weichert was not prejudiced. Nonetheless, he denied the relief, ruling, in reliance upon *Baumann v. Marinaro,* 95 *N.J.* 380, 395 (1984), that relief for the mistake contained in the entered judgment was available only pursuant to *R.* 4:50–1(a) and was barred by the one-year limitation of *R.* 4:50–2. An order was entered permitting Weichert to pay the $22,500 plus accumulated interest to the clerk of the court and to thereupon have the judgment against it marked satisfied. Plaintiffs ap-

peal from an order denying their motion to file an amended judgment setting forth joint and several liability.

## I.

■ The trial of the underlying controversy concluded on May 27, 1987. An order entering judgments against each of the defendants for their jury-determined share (plus interest) was signed by the trial judge on June 23, 1987 on a form prepared by plaintiffs' attorney.[1]

*R.* 4:47(a) provides that such a judgment be forthwith entered by the clerk, without awaiting further direction by the court "unless the court otherwise orders." Nothing in the record suggests that such an order was given by the trial judge. Rather, it appears the attorney-generated judgment order was prepared and signed in response to a county judicial policy which substituted such orders for the mandated clerk's action in order to save the clerk the trouble of the paper work.[2] The resulting court order was thus not a considered judicial decision but rather a mere ministerial act on behalf of the court clerk—intended to do no more than save the clerk the trouble of doing that which the Rules of Court require. As such, the order was

---

[1]The order entered judgments in favor of plaintiffs and
"1. * * against [Weichert] in the sum of $26,437.50 ..." and
"2. * * "[House Chek] in the sum of $26,437.50...." An amended final judgment prepared by plaintiffs' attorneys and entered August 12, 1987 repeated these provisions.

[2]On February 2, 1981 the Monmouth County Assignment Judge issued a memorandum which stated:

> It is requested that the trial judge compel the attorney to submit an Order for Judgment where a money judgment is rendered. The Clerk of the Superior Court requires the submission of forms where the trial judge has not required the attorneys to submit an Order for Judgment.
>
> If the trial judge has not requested the submission of an Order for Judgment, additional paper work is generated in the County Clerk's Office. Please order a written judgment from the attorney in each case where a money judgment is rendered.

*See Cunningham v. Rummel,* 223 *N.J.Super.* 15, 18 (App.Div.1988).

required to conform to the verdict and the requirements of law. To the extent it did not do so it was a clerical error. *See* 2 *Restatement of Judgments* 2d § 71 Comment e (1982). We are satisfied the judgment order should have been amended to conform to the verdict and law. *See Ortega v. State,* 213 *N.J.Super.* 16, 22 (App.Div.1986). Since the orders did not reflect a deliberative process but merely a clerical act, they could be corrected at any time. *See R.* 1:13–1; *Wicks v. Central R.R. Co. of N.J.,* 129 *N.J.Super.* 145, 149 (App.Div. 1974), certif. den. 66 *N.J.* 317 (1974).

## II.

■ Although this conclusion resolves the joint and several nature of plaintiffs' judgment, it does not resolve the question of whether plaintiffs may collect more from defendant Weichert than the amount representing its percentage share of the damages; *i.e.,* the $22,500.

Joint and several liability is a mechanism for providing an injured party with full recovery. *See Rivera v. Gerner,* 89 *N.J.* 526, 535 (1982). It provides the injured party with complete financial exoneration when some, but not all, of the tortfeasors are able to respond to the judgment. *Ibid.*

In the instant case with the receipt of Weichert's $22,500, plaintiffs will have received a total of $132,500 (exclusive of interest) with respect to their stipulated $112,000 injury. They have been fully compensated for their loss. They are entitled to but one full satisfaction of the judgment. Although our research has failed to disclose any prior law to support this logical and equitable result, we note that old cases dealing with the effect of releases of a joint tortfeasor at common law applied similar reasoning. *See Cartel Capital Corp. v. Fireco of New Jersey,* 81 *N.J.* 548, 559 (1980).

Plaintiffs having obtained full satisfaction for their injury, the need for an amended order is moot.

Affirmed.