NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5397-15T4

THE ESTATE OF FRANCIS P. KENNEDY;
THE FRANCIS P. KENNEDY IRREVOCABLE
TRUST AGREEMENT; THE FRANCIS P.
KENNEDY IRREVOCABLE TRUST AGREEMENT
II; THE FRANCIS P. KENNEDY IRREVOCABLE
TRUST AGREEMENT III; FRANCIS P.
KENNEDY QUALIFIED PERSONAL RESIDENCE
INTEREST TRUST; THE LOUIS KENNEDY 2002
IRREVOCABLE TRUST F/B/O LOUIS KENNEDY;
THE PATRICIA KENNEDY 2002 IRREVOCABLE
TRUST F/B/O PATRICIA KENNEDY; THE
CHERYL KENNEDY 2002 IRREVOCABLE TRUST
F/B/O CHERYL KENNEDY; and THE DONALD
KENNEDY IRREVOCABLE TRUST F/B/O DONALD
KENNEDY,

     Plaintiffs-Appellants,

v.

STUART A. ROSENBLATT, C.P.A.; WISS &
COMPANY, LLP; ESTATE OF JOEL
SHOOBE, ESQ.; ROBERT D. BORTECK, ESQ.;
BORTECK, SANDERS & TORZEWSKI, LLP;
ROBERT S. FINK, ESQ.; and KOSTELANETZ
& FINK, LLP,

     Defendants-Respondents.

_____

IN THE MATTER OF RIKER DANZIG SCHERER
HYLAND & PERRETTI, LLP,

     Appellants.

_____

| APPROVED FOR PUBLICATION |
| --- |
| November 4, 2016 |
| APPELLATE DIVISION |

Argued October 5, 2016 — Decided November 4, 2016

Before Judges Sabatino, Nugent and Currier.

On appeal from an interlocutory order of Superior Court of New Jersey, Law Division, Essex County, Docket No. L-1921-16.

John M. Loalbo argued the cause for appellants (Riker Danzig Scherer Hyland & Perretti, LLP, attorneys; Mr. Loalbo, of counsel; Mr. Loalbo, Stephen J. Pagano, and Stephen M. Turner, on the briefs).

Anthony J. Sylvester argued the cause for respondent Estate of Joel Shoobe (Sherman, Wells, Sylvester & Stamelman, LLP, attorneys; Mr. Sylvester and Anthony Velanziano, on the briefs).

The opinion of the court was delivered by

NUGENT, J.A.D.

This interlocutory appeal involves a delicate and difficult conflict-of-interest issue that arose after plaintiffs' attorney, who had filed and dismissed the underlying professional negligence action while at Weiner Lesniak, LLP, recommended the action after joining Riker, Danzig, Scherer, Hyland & Perretti, LLP ("Riker"), the firm that had defended the Estate of Joel Shoobe, Esq. ("the Estate") in the previous action. Meanwhile, the attorneys who had defended the Estate while at Riker had left Riker and joined a new firm, taking with them the Estate's paper file but leaving electronically stored documents ("the electronic file" or the "electronic documents"), including a privileged memorandum outlining the defense. When

Riker recommended the action on behalf of plaintiffs, the Estate moved to disqualify Riker, asserting a conflict of interest.

The trial court granted the Estate's motion. On leave granted, plaintiffs and Riker appealed. Having considered the parties' arguments in light of applicable legal principles, and having further considered certain amendments to the Rules of Professional Conduct ("RPCs") and related Official Comments that became effective after the trial court's decision, we vacate the order disqualifying Riker, but do so conditionally, as will be discussed infra.[1]

The background facts leading up to the disqualification dispute are largely undisputed. On October 11, 2013, plaintiffs Estate of Francis P. Kennedy and the eight trusts commenced a professional negligence action against defendants.[2] The

---

[1]    Following our grant of leave to file this interlocutory appeal, the trial court dismissed the action in its entirety on an unrelated basis. Plaintiffs filed a motion in this court challenging the jurisdictional propriety of the trial court's action. We denied the motion without prejudice. As prescribed, infra, plaintiffs may, within thirty days of this decision, file a notice of appeal from the trial court's final order.

[2]    Plaintiffs labeled the three causes of action they asserted against each defendant as negligent performance of services, breach of the covenant of good faith and fair dealing, and breach of contract. Regardless of these labels, the action, in substance, is a professional negligence action. Defendant Rosenblatt is a CPA, defendant Wiss & Company, LLP is an accounting firm, and the remaining defendants are the estate of
(continued)

complaint was filed by John M. Loalbo, Esquire, then a member of Weiner Lesniak, LLP. The Estate retained Riker to defend it. Anthony J. Sylvester, then a Riker attorney, filed an answer and undertook the Estate's defense.

On January 27, 2014, a Riker attorney prepared an "Initial Case Analysis" ("the Analysis"), which was placed both in Riker's paper file and in Riker's electronic document management system. According to Sylvester, the Analysis was "a detailed case assessment and strategy memorand[um]," which was sent to the client.

On July 11, 2014, nine months after the complaint was filed, Sylvester and several other attorneys handling the Estate's defense left Riker and joined the new firm of Sherman Wells Sylvester and Stamelman ("Sherman Wells"), taking with them the Estate's paper file. Riker withdrew as the Estate's counsel, Sherman Wells substituted in, and the parties filed a

---

(continued)
a former lawyer, lawyers, and their present or former law firms. See Charles A. Manganaro Consulting Eng'rs, Inc. v. Carneys Point Twp. Sewerage Auth., 344 N.J. Super. 343, 349 (App. Div. 2001) (explaining that a counterclaim plaintiff could not avoid the affidavit of merit statute, N.J.S.A. 2A:53A-26 to -29, by labeling the counterclaim as a claim for breach of contract, when the allegations in the counterclaim were that the counterclaim defendant deviated from the standard of care exercised in similar situations by the professionals practicing in the field).

substitution of counsel form with the court on July 14, 2014. The following month, on August 27, 2014, the action was dismissed by way of a consent order, without prejudice, for reasons not relevant to this appeal. On September 15, 2014, less than a month after the action was dismissed, Loalbo, plaintiffs' attorney, left Weiner Lesniak, LLP and joined Riker.

Nineteen months after dismissing the action, on March 23, 2016, plaintiffs, through Loalbo, now at Riker, commenced the current action by filing a complaint, alleging essentially the same causes of action that had been alleged in the previous complaint. On April 11, 2016, Sylvester, now at Sherman Wells, contacted Riker concerning the conflict of interest. The next day, Riker established an internal "ethical wall" to prevent Loalbo and his staff from accessing the Estate's electronic file stored in the firm's electronic management database. Riker had until then taken no action to prevent the firm's personnel from being able to access the Estate's electronic files.

In addition to establishing the so-called ethical wall, the same day, April 12, 2016, a senior attorney at Riker, assisted by IT personnel, reviewed some part of the electronic file to determine, among other things, whether anyone at Riker had ever accessed any of the Estate's electronic documents. The senior attorney determined from that review that no attorney, other

A-5397-15T4

than those who left Riker and joined Sherman Wells, had accessed the electronic documents.[3]

The following month, on May 25, 2016, the Estate filed a motion to disqualify Riker as plaintiffs' counsel. On June 10, 2016, the trial court granted the motion, concluding the RPCs mandated this result. The court noted the Analysis was protected information, and until walled off by IT personnel, it had been available to all Riker attorneys. In addition, the document had apparently been viewed, at least to some extent, by the Riker senior attorney.

Riker filed a motion for leave to appeal from the implementing disqualification order. We granted the motion. Although we did not stay the order, we have permitted Riker to

---

[3] The actions of the senior attorney and IT personnel were established on the disqualification motion record through Loalbo's certification, which was incompetent with respect to the document access issues, because it was not based on his first-hand knowledge. R. 1:6-6 ("If a motion is based on facts not appearing of record or not judicially noticeable, the court may hear it on affidavits made on personal knowledge, setting forth only facts which are admissible in evidence to which the affiant is competent to testify . . . ."). We address this deficiency, infra. On appeal, Riker also attempted to supplement the appellate record with a second supplemental certification from Loalbo that had not been filed with the trial court. The Estate objected and moved to strike the second supplemental certification. In view of our disposition of this appeal, we deem the issue moot, and deny the motion on that basis.

represent plaintiffs on the present appeal solely with respect to the disqualification issues.

We turn to the parties' appellate arguments and our role in reviewing the trial court's order. A trial court's "determination of whether counsel should be disqualified is, as an issue of law, subject to de novo plenary appellate review." City of Atlantic City v. Trupos, 201 N.J. 447, 463 (2010) (citing J.G. Ries & Sons, Inc. v. Spectraserv, Inc., 384 N.J. Super. 216, 222 (App. Div. 2006)). When reviewing such a determination, we must "'balance competing interests, weighing the need to maintain the highest standards of the profession against a client's right freely to choose his counsel.'" Id. at 462 (quoting Dewey v. R.J. Reynolds Tobacco Co., 109 N.J. 201, 218 (1988)). As part of the balancing process, we recognize "'a person's right to retain counsel of his or her choice is limited in that there is no right to demand to be represented by an attorney disqualified because of an ethical requirement.'" Ibid. (quoting Dewey, supra, 109 N.J. at 218). Therefore, "'[i]f there be any doubt as to the propriety of an attorney's representation of a client, such doubt must be resolved in favor of disqualification.'" Herbert v. Haytaian, 292 N.J. Super. 426, 438-39 (App. Div. 1996) (alterations in original) (citation omitted).

Situations such as the one before us, involving a lawyer terminating an association with a firm, are subject to RPC 1.10(b), which states:

> [w]hen a lawyer has terminated an association with a firm, the firm is not prohibited from thereafter representing a person with interests materially adverse to those of a client represented by the formerly associated lawyer and not currently represented by the firm, unless: (1) the matter is the same or substantially related to that in which the formerly associated lawyer represented the client; and (2) any lawyer remaining in the firm has information protected by RPC 1.6 and RPC 1.9(c) that is material to the matter.

Here, Sylvester and other lawyers terminated their association with Riker and continued to represent the Estate. Riker now represents plaintiffs. Under the conflicts standards expressed in RPC 1.10(b), Riker is not disqualified unless both subsections (1) and (2) apply. The parties do not dispute the applicability of subsection (1), namely, the previous and current actions are the same or substantially related, nor do they dispute the Estate's electronic file contains protected material. Rather, they dispute the applicability of subsection (2), that is, whether, after Sylvester and the others left, "any lawyer remaining in the firm has [the] information" that is protected and material to the matter (emphasis added). Plaintiffs and Riker argue the phrase "has information" means

"has actual knowledge"; the Estate argues the phrase "has information" means "has access to"; and, alternatively, once a Riker senior partner actually accessed the analysis, he "had information" within the meaning of RPC 1.10(b)(2).

We conclude with respect to the electronic file that interpreting the phrase "has information" to mean "has actual knowledge or has accessed the electronic file" — subject to the narrow exception discussed infra concerning the process of investigating whether a conflict exists — serves the purpose of the RPCs and strikes the proper balance between the "need to maintain the highest standards of the profession [and] a client's right freely to choose his counsel." Trupos, supra, 201 N.J. at 462.

The highest standards of the profession involved when this situation occurs are the maintenance of client confidentiality and the need to ensure that protected client information is not used to the detriment of a former client. "[T]he principle of attorney-client confidentiality imposes the inviolability of a sacred trust upon the attorney." State v. Land, 73 N.J. 24, 30 (1977). The RPCs gird that principle by "generally forbid[ding] disclosure of client information, without the client's consent, unless one of the exceptions to the rule[s are] available." In re Advisory Opinion No. 544, 103 N.J. 399, 407 (1986). The RPCs

also underscore the principle that an attorney may not use information obtained from a client to the detriment of that client.  See, e.g., RPC 1.9(c)(1) ("A lawyer who has formerly represented a client in a matter . . . shall not thereafter: . . . use information relating to the representation to the disadvantage of the former client . . . ."); RPC 1.10(c)(1) ("When a lawyer becomes associated with a firm, no lawyer associated in the firm shall knowingly represent a person in a matter in which that lawyer is disqualified under RPC 1.9 unless: (1) the matter does not involve a proceeding in which the personally disqualified lawyer had primary responsibility; (2) the personally disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom; and (3) written notice is promptly given to any affected former client to enable it to ascertain compliance with the provisions of this Rule.").

It is self-evident that an attorney cannot violate the sacred trust imposed by the principle of attorney-client confidentiality if the attorney has not represented the client, has not obtained information concerning the client or the client's matter, and has not accessed the client's file.  Under such circumstances, the balance between the need to maintain the highest standards of the profession on the one hand, and a

client's right freely to choose counsel on the other, must be struck in favor of a client's right freely to choose counsel. There is no danger in such situations of the highest standards of the profession being compromised, and there is consequently no reason to restrict the right of clients to freely choose their attorneys.

That brings us to the Estate's argument that Riker should be disqualified because a senior attorney accessed the Estate's electronic file. This argument in turn implicates several other issues: why did the senior attorney access the electronic file, what exactly did the senior attorney access, and why were protected electronic documents not deleted? The answers to these questions and the ensuing analysis is compounded by the absence of certifications from the senior attorney and the IT personnel who assisted in accessing the electronic file.

The parties do not appear to dispute the purpose of the Riker senior attorney's investigation, namely, to determine whether a conflict existed; nor do they appear to dispute that IT personnel were capable of determining when the electronic file had been accessed and by whom. If the Riker senior attorney merely accessed metadata associated with the file, solely to determine if any lawyer other than Sylvester and those who left with him had accessed the file, then RPC 1.10(b) did

11

not require Riker's disqualification.[4]  If the senior attorney accessed the content of the Analysis or any other protected information, then the trial judge properly disqualified Riker. Accessing metadata that merely discloses who has accessed an electronic file does not result in an attorney having "information protected by RPC 1.6 and RPC 1.9(c) that is material to the matter."  RPC 1.10(b)(2).

Additionally, if the Riker senior attorney accessed only enough information in the electronic file to determine whether a conflict existed — such as viewing only the title of a document — and then accessed the metadata to see if any other attorney had accessed the file, Riker would not have been disqualified. Merely determining whether an electronic file contains protected information, as distinguished from reviewing the content of the information, does not result in an attorney having protected information proscribed by RPC 1.10(b)(2).  Although accessing a file in other instances results in the imputation of proscribed knowledge, we do not interpret RPC 1.10(b) as prohibiting an

---

[4]   See RPC 1.0 (p) (effective Sept. 1, 2016) (defining "metadata" as "embedded information in electronic documents that is generally hidden from view in a printed copy of a document  . . . .  Metadata may reflect such information as the author of a document, the date or dates on which the document was revised, tracked revisions to the document, and comments inserted in the margins").

attorney from reviewing non-substantive information to determine whether a conflict exists, a determination attorneys are required to undertake, particularly where, as here, a former client makes an allegation of a disqualifying conflict. See also RPC 1.9 (regarding former clients). Adherence to these ethical principles is particularly important in the current legal market, in which lawyers and clients more frequently rotate from law firm to law firm than they had in the past.

Recent amendments and commentary to RPC 1.6 lend support to our decision. RPC 1.10(b) refers to information "protected by RPC 1.6 and RPC 1.9." RPC 1.6(d), adopted August 1, 2016, effective September 1, 2016, authorizes a lawyer to reveal information relating to a client "to the extent the lawyer reasonably believes necessary: . . . (5) to detect and resolve conflicts of interest arising from the lawyer's change of employment . . . but only if the revealed information would not compromise the attorney-client privilege or otherwise prejudice the client." RPC 1.6(d)(5) further provides that "[a]ny information so disclosed may be used or further disclosed only to the extent necessary to detect and resolve conflicts of interest." The Official Comment to new RPC 1.6(d)(5) states in pertinent part:

Paragraph (d)(5) recognizes that lawyers in different firms may need to disclose limited information to each other to detect and resolve conflicts of interest, such as when a lawyer is considering an association with another firm . . . . Under these circumstances, lawyers and law firms are permitted to disclose limited information, but only once substantive discussions regarding the new relationship have occurred. Any such disclosure should ordinarily include no more than the identity of the persons and entities involved in a matter, a brief summary of the general issues involved, and information about whether the matter has terminated. Even this limited information, however, should be disclosed only to the extent reasonably necessary to detect and resolve conflicts of interest that might arise from the possible new relationship. Moreover, the disclosure of any information is prohibited if it would compromise the attorney-client privilege or otherwise prejudice the client . . . . Any information disclosed pursuant to paragraph (d)(5) may be used or further disclosed only to the extent necessary to detect and resolve conflicts of interest.

[Pressler & Verniero, <u>Current N.J. Court Rules</u>, Official Comment on <u>RPC</u> 1.6 (2016).][5]

In fairness to counsel, we are mindful these provisions did not exist when Riker internally reviewed the conflict issue in

---

[5] We also note that new subsection (f) of <u>RPC</u> 1.6 does not address an outgoing attorney's duties to reasonably assure his or her former firm will safeguard access to electronically stored information and what assurances should be made to clients affected by the transition. At oral argument on appeal counsel agreed this is a worthwhile subject to refer to the Advisory Committee on Professional Ethics.

April 2016.  Nonetheless, these provisions inform our decision. Here, the Riker senior attorney needed to access the Estate's electronic file to determine whether any Riker attorney who remained after Sylvester left the firm had accessed the file, and possibly to determine from a review of the document titles whether any documents were protected.  Reviewing anything more than the metadata concerning when the file was accessed, and perhaps a title to a document, would have unreasonably exceeded the need to determine the existence of a conflict.  In such case, there would certainly be a doubt under RPC 1.10(b) as to the propriety of Riker's continuing representation of plaintiffs, and that doubt would be resolved in favor of disqualification.  Herbert, supra, 292 N.J. Super. at 438-39. That brings into focus Riker's procedural non-compliance with Rule 1:6-6, which hinders our informed resolution of the access issue.

"It bears emphasizing that '[a]ffidavits by attorneys of facts not based on their personal knowledge but related to them . . . constitute objectionable hearsay.'" Mazur v. Crane's Mill Nursing Home, 441 N.J. Super. 168, 179-80 (App. Div. 2015) (first alteration in original) (quoting Pressler & Verniero, supra, Official Comment on Rule 1:6-6).  For that reason, "Rule 1:6-6 and its implicit prohibition — explicit in the rule's

comments — against attorneys filing certifications not based on firsthand knowledge serve a salient purpose. Attorneys should comply with the rule and the trial courts should enforce it." Id. at 181.

Here, according to Loalbo's certification on the motion record, "a senior attorney at [Riker] was asked to review the law on disqualification and the facts surrounding this matter, including a review of the electronic information possessed by Riker, and whether or not anyone at Riker . . . other than the Sylvester Group, had accessed such information." In a footnote to that sentence, Loalbo noted: "Specifically, in conjunction with [Riker's] IT department, the senior attorney tasked with reviewing the information regarding conflicts was able to check the time stamps of when each protected document was last checked out by an attorney at Riker . . . ." Although the Estate apparently did not object to the admission on the motion record of this hearsay evidence, the Estate interpreted this portion of Loalbo's certification as an acknowledgment that the Riker partner reviewed the substantive content of the Analysis, as the Estate so asserted in a brief in opposition to plaintiffs' motion for leave to appeal.

Had this lawsuit not been dismissed in its entirety by the trial court following our grant of leave to file this

16                                                              A-5397-15T4

interlocutory appeal, we would simply remand the matter, permit the parties to supplement the record, and direct the trial court to resolve the matter in a manner consistent with this opinion, conducting a hearing if necessary. The dismissal creates a dilemma. Plaintiffs intend to appeal the dismissal but need to know whether Riker can file the appeal. When the appeal is filed, the trial court will be divested of jurisdiction, absent an order of this court partially remanding jurisdiction to the trial court on discrete matters. To solve this dilemma, we order the following course of action.

First, Riker may file a notice of appeal of the dismissal order within thirty days of this opinion. The time for other filings in connection with that appeal shall be suspended until the disqualification issues are resolved. Second, concerning the possible conflict implicated by RPC 1.10(b), within twenty days of the date of this opinion, Riker shall serve and file with the trial court certifications from the senior attorney who accessed the electronic file and at least one IT person who assisted. The certifications shall generally describe the information that was accessed and explicitly state whether the content of any protected information was accessed, including the Analysis. The certifications shall also state whether the protected information can be deleted, and if so, why it has not

17                                                                    A-5397-15T4

been deleted; if not, why not. Lastly, the certifications shall address how those who accessed the file avoided reviewing the content of protected information.

In addition, Riker shall arrange to again access the Estate's electronic file, within thirty days, but in the presence of Sylvester and Sylvester's designated IT person, to determine whether anyone has accessed the file since Sylvester left Riker, other than the senior attorney who attempted to determine the existence of a conflict. The result of this joint exercise, if it confirms Riker's representations, will presumably provide some assurance to the Estate that no Riker attorney has confidential information material to the substantive issues in the underlying litigation. If the protected information can be deleted, it should be deleted, unless for some reason Sylvester does not already have it. We expect the parties will agree as to what will be deleted, and urge them to do so. Absent agreement on deletion, the trial court shall resolve the issue.

If this process reveals that the Riker senior attorney actually reviewed the substantive content of confidential information, such as the substantive content of the Analysis, then the matter shall be remanded to the trial court for the limited purpose of reinstating the disqualification order. On

18

the other hand, if there remains a bona fide factual dispute about this issue, the matter shall be remanded to the trial court for the limited purpose of conducting a hearing, if necessary, and disposing of the dispute.

The trial court's June 10, 2016 disqualification order is consequently vacated subject to the terms and conditions we have specified. The matter is remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5397-15T4