**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1368-16T4

THE ESTATE OF FRANCIS P. KENNEDY,
(FREDERICK KENNEDY AND GABRIEL
A. YANDOLI, CO-EXECUTORS), THE
FRANCIS P. KENNEDY IRREVOCABLE
TRUST AGREEMENT (FREDERICK
KENNEDY, TRUSTEE), THE FRANCIS
P. KENNEDY IRREVOCABLE TRUST
AGREEMENT II (FREDERICK KENNEDY,
TRUSTEE), THE FRANCIS P. KENNEDY
IRREVOCABLE TRUST AGREEMENT
III (FREDERICK KENNEDY, TRUSTEE),
THE FRANCIS P. KENNEDY QUALIFIED
PERSONAL RESIDENCE INTEREST
TRUST (FREDERICK KENNEDY,
TRUSTEE), THE LOUIS KENNEDY 2002
IRREVOCABLE TRUST, F/B/O LOUIS
KENNEDY (FREDERICK KENNEDY,
TRUSTEE), THE PATRICIA KENNEDY
2002 IRREVOCABLE TRUST, F/B/O
PATRICIA KENNEDY (FREDERICK
KENNEDY, TRUSTEE), THE CHERYL
KENNEDY 2002 IRREVOCABLE TRUST,
F/B/O CHERYL KENNEDY (FREDERICK
KENNEDY, TRUSTEE) AND THE
DONALD KENNEDY 2002 IRREVOCABLE
TRUST, F/B/O DONALD KENNEDY
(FREDERICK KENNEDY, TRUSTEE),

      Plaintiffs-Appellants,

v.

STUART A. ROSENBLATT, CPA;
WISS & COMPANY, LLP; ESTATE
OF JOEL SHOOBE ESQ.; ROBERT
D. BORTECK, ESQ.; BORTECK,
SANDERS & TORZEWSKI, LLP;
ROBERT S. FINK, ESQ., and
KOSTELANETZ & FINK, LLP,

     Defendants-Respondents.

_____

Argued October 24, 2018 — Decided  November 14, 2018

Before Judges Koblitz, Ostrer and Currier.

On appeal from Superior Court of New Jersey, Law Division, Essex County, Docket No. L-1921-16.

Lance J. Kalik argued the cause for appellant (Riker Danzig Scherer Hyland & Perretti LLP, attorneys; Lance J. Kalik, of counsel and on the brief; John M. Loalbo and Stephen J. Pagano, on the brief).

Matthew Toto argued the cause for respondents Robert D. Borteck and Borteck, Sanders & Torzewski, LLP (Traub Lieberman Straus & Shrewsberry LLP, attorneys; Matthew Toto, on the brief).

Steven J. Tegrar argued the cause for respondents Kostelanetz & Fink, LLP and Robert S. Fink (Law Office of Steven J. Tegrar, attorneys; Steven J. Tegrar, on the brief).

Anthony J. Sylvester argued the cause for respondent Estate of Joel Shoobe (Sherman Wells Sylvester &

2

Stamelman LLP, attorneys; Anthony J. Sylvester and Anthony C. Valenziano, on the brief).

John R. Gonzo argued the cause for respondents Wiss & Company, LLP and Stuart A. Rosenblatt (L'Abbate, Balkan, Colavita & Contini, LLP, attorneys; John R. Gonzo, of counsel and on the brief).

PER CURIAM

In this complicated litigation, we ultimately affirm the motion judge's order dismissing the complaint with prejudice. It is necessary to review the procedural history in some detail to explain our decision. This matter involves plaintiffs, the co-executors of an estate and trustee of a trust, and four defendants, the lawyers and accountants against whom plaintiffs brought a professional malpractice action in 2013. The parties signed a consent order in 2014 dismissing the matter unless any of the parties re-filed any of the claims between 91 and 360 days after the entry of the consent order. The order provided that, prior to the expiration of the 360-day period, any party could apply for an extension, stating that if no such extension is requested, the original matter "shall" be dismissed with prejudice. The order also tolled the statute of limitations.

Seven months after the expiration of the 360 day period, plaintiffs re-filed the malpractice action. Defendants each filed a motion to dismiss, and defendant

3

Estate of Joel Shoobe, Esq. moved to disqualify plaintiffs' counsel. The motion judge granted the motion to disqualify plaintiffs' counsel, but denied defendants' motions to dismiss, issuing an opinion that misquoted the language of the consent order by substituting the word "may" for "shall." Defendants filed individual motions for reconsideration, while plaintiffs filed for leave to appeal the disqualification order. After the motion judge denied plaintiffs' motion for a stay, plaintiffs filed an emergent application for a stay of the proceedings, which we granted when we granted leave to appeal the disqualification decision.

On the same day we stayed the proceedings, the motion judge issued an amended order, reversing her earlier decision. The judge acknowledged the misquotation, dismissing the matter with prejudice consistent with the plain language of the consent order.

Plaintiffs seek a reversal of the dismissal order, alleging a lack of jurisdiction in light of our stay order and denial of due process, arguing that dismissal of the re-filed malpractice action was in error and would result in a manifest injustice.

## I. Detailed Case History

We must explain the prior history in some detail. In 2012, Cheryl, Louis, Patricia and Candace Kennedy, beneficiaries of the estate of Francis P. Kennedy

and certain trusts established by Francis P. Kennedy, brought claims against Frederick Kennedy, as co-executor of the estate and trustee of the trusts, and Gabriel Yandoli, as co-executor of the Estate, alleging breaches of fiduciary duties and objecting to plaintiffs' accounting (the beneficiary action).

The beneficiary action alleged that the defendants, plaintiffs in the current action, made improper loans from the trusts to the estate, and failed to obtain a refund for the estate's overpayment of taxes. Plaintiffs assert in this action that they entered into such loans on the advice of their attorneys, defendants Joel Shoobe, Esq.,[1] Robert D. Borteck, Esq. and Borteck, Sanders & Torzewski, LLP (together with Mr. Borteck, the Borteck defendants), and their accountants, Stuart A. Rosenblatt, CPA, and Wiss & Company LLP (together with Mr. Rosenblatt, the Wiss defendants). Plaintiffs claim they also relied on Robert S. Fink, Esq. and Kostelanetz & Fink, LLP (together with Mr. Fink, the Fink defendants) in connection with the estate's tax liability.

In 2013, plaintiffs filed a malpractice lawsuit against defendants with regard to the administration of the estate and trusts for (1) negligence in the performance of professional services, (2) breach of the covenant of good faith

---

[1] Mr. Shoobe died and is represented by his estate.

and fair dealing, and (3) breach of contract.[2] The Fink defendants filed a motion to dismiss the complaint as premature, because damages were not yet ascertained.

Because plaintiffs could not establish damages pending the outcome of underlying beneficiary and estate tax litigation action, which would largely determine plaintiffs' damages in the malpractice action, the parties began negotiating for a suspension of the malpractice action. In August 2014, the Fink defendants circulated an email to all counsel regarding a proposed consent order, seeking "more definitive language stating after 180 days the dismissal will convert to a dismissal with prejudice."

Later the same day, the Borteck defendants circulated an email to all counsel indicating:

> My concern is my client's counterclaim for his fees. I do not want my client barred from pursuing his fees on any procedural grounds. Perhaps you can add a sentence that says that the Borteck defendants' counterclaims may be refiled at any time within the applicable statute of limitations or within 6 months after plaintiffs' claim is dismissed with prejudice, whichever is longer.

---

[2] Plaintiffs allege that defendants overstated the value of the Estate's largest asset, resulting in an inappropriate tax liability of approximately $3,000,000, and failed to file a protective claim for refund within the appropriate time period.

Two days later, plaintiffs' counsel circulated a revised consent order incorporating the suggestions made by defendants. The parties entered into a "Consent Order Dismissing Without Prejudice" the malpractice action. The consent order was entered by the court at the end of August 2014, and, along with tolling the statute of limitations and allowing the Borteck counterclaim, provided:

> a. Any of the parties hereto may re-file any of the claims hereby dismissed at any time between 91 and 360 days after the entry of this Order under a new docket number.
>
> b. Prior to the expiration of the 360 day period, for good cause shown, any party may apply to the Court for an extension of such time on notice to all other parties. <u>If no such extension is requested the original matter shall be dismissed with prejudice</u>.
>
> [Emphasis added.]

Plaintiffs claim they expended "time and energy . . . working with the IRS to try to reduce the Estate's Federal estate tax liability."

The 360-day time period within which to seek an extension of time or re-file the complaint ended on August 22, 2015. Three months later, in November 2015, and again in March 2016, the Borteck defendants contacted plaintiffs by email, requesting an update pertaining to the underlying beneficiary and estate tax litigation. In March, the Borteck defendants emailed plaintiffs forty minutes

later stating, "Never mind. I'm just going to sent [sic] you a stipulation of dismissal pursuant to the [c]onsent [o]rder." The Borteck defendants then sent plaintiffs a "Stipulation of Dismissal with Prejudice."

In response, plaintiffs re-filed their malpractice complaint on March 23, 2016, seven months after the end of the agreed-upon 360-day time frame in the consent order. In response, defendants separately filed motions to dismiss pursuant to Rule 4:6-2(e). Defendant Shoobe additionally filed a motion to disqualify counsel for plaintiffs.

On June 10, 2016, the motion judge heard oral argument and entered orders (1) granting defendant Shoobe's motion to disqualify counsel for plaintiffs[3] and (2) denying each of the four motions to dismiss. When explaining her decision to deny the defense motions to dismiss, the motion judge misquoted the consent order, writing:

> In this case, the consent order states, "b. Prior to the expiration of the 360 day period, for good cause shown, any party may apply to the Court for an extension of such time on notice to all other parties. If no such extension is requested the original matter may be dismissed with prejudice."

---

[3] The motion judge disqualified plaintiffs' counsel because after plaintiffs' counsel joined Riker Danzig, which formerly represented defendant Shoobe, there "was no implementation of an effective screen to protect the Shoobe Estate['s] confidential communications with its Riker Danzig defense counsel prior to the viewing by the senior partner."

[Emphasis added.]

Defendants filed motions for reconsideration. Plaintiffs filed both a motion for leave to appeal the disqualification order and a motion before the motion judge to stay the reconsideration proceedings pending the outcome of plaintiffs' motion for leave to appeal the disqualification order. The motion judge adjourned defendant's reconsideration motions until August 19, 2016 to allow plaintiffs' motion for a stay to be heard, denying the stay motion on August 5, 2016. On August 11, 2016, after receiving the August 5 order denying a stay, plaintiffs contacted defense counsel to request consent to further adjourn the reconsideration hearing, and to advise that plaintiffs intended to file an emergent appellate application for a stay. Not all defendants consented.

The following day, plaintiffs informed the trial judge by letter that they intended to oppose defendants' motions for reconsideration, and requested an adjournment of the reconsideration motions to allow plaintiffs to file an emergent application for a stay. Plaintiffs explained that due to the disqualification order, plaintiffs were unrepresented and thus unable to file opposition to the reconsideration motions. Plaintiffs did not receive a response from the motion judge.

A-1368-16T4

On August 15, 2016, plaintiffs filed an emergent application for a stay, advising that pending motions for reconsideration were scheduled to be decided four days later on August 19, 2016. On August 17, 2016, we granted plaintiffs' motion for leave to appeal the disqualification order, stating, "[a]ll proceedings in the trial court are stayed until further order of this court."

On August 17, 2016, the same date we ordered a stay, the motion judge signed an order reversing her prior decision and granting defendants' motion, dismissing plaintiffs' complaint with prejudice pursuant to Rule 4:6-2. Citing to Rule 1:13-1, which allows the correction of orders for "clerical mistakes" at any time, the motion judge acknowledged that she had misquoted the language in the consent order as "may" rather than "shall be dismissed with prejudice." The motion judge wrote: "'Shall' indicates the intent of the parties to divest themselves of discretion with regard to the dismissal."

We published Estate of Kennedy v. Rosenblatt, 447 N.J. Super. 444 (App. Div. 2016), reversing and remanding the issue of disqualification,[4] commenting:

> Had this lawsuit not been dismissed in its entirety by the trial court following our grant of leave to file this interlocutory appeal, we would simply remand the matter, permit the parties to supplement the record, and direct the trial court to resolve the matter in a manner

---

[4] In April 2017, the remand judge entered an order vacating the disqualification order.

consistent with this opinion, conducting a hearing if necessary. The dismissal creates a dilemma. Plaintiffs intend to appeal the dismissal but need to know whether Riker can file the appeal. When the appeal is filed, the trial court will be divested of jurisdiction, absent an order of this court partially remanding jurisdiction to the trial court on discrete matters. To solve this dilemma, we order the following course of action.

[Estate of Kennedy, 447 N.J. Super. at 457.]

We allowed plaintiffs' counsel to file a notice of appeal of the dismissal order within thirty days, and ordered that the "time for other filings in connection with that appeal shall be suspended until the disqualification issues are resolved." Ibid.

## II. Legal Discussion

We review a dismissal order de novo. Flinn v. Amboy Nat. Bank, 436 N.J. Super. 274, 287 (App. Div. 2014). A trial court's interpretation of the law is generally reviewed de novo. Occhifinto v. Olivo Constr. Co. LLC, 221 N.J. 443, 453 (2015). Because we review this decision de novo, it does not matter whether we are reviewing the initial order denying the dismissal or the amended order granting the dismissal with prejudice. We would reach the same result. Although it may have been preferable for the motion judge to exercise her discretion to adjourn the reconsideration motions until plaintiffs had an

11

opportunity to seek an appellate stay pending resolution of the disqualification issue, the reversal of her decision made no practical difference.

## A. Jurisdiction

We agree with plaintiffs that the motion judge's change of her order does not fit within the stricture of Rule 1:13-1. See Kustka v. Batz, 236 N.J. Super. 495, 499 (App. Div. 1989) (stating that only "orders [that] did not reflect a deliberative process but merely a clerical act . . . could be corrected at any time."). Rule 1:13-1 states that "[c]lerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight and omission may at any time be corrected by the court on its own initiative . . . ." Nevertheless, "[t]his rule clearly provides no authority for the trial court's reconsideration of its own orders and judgments." Pressler & Verniero, Current N.J. Court Rules, cmt. 1 on R. 1:13-1 (2019); compare McNair v. McNair, 332 N.J. Super. 195, 199 (App. Div. 2000) (holding that a stipulated calculation error is sufficiently akin to a clerical error), and Wicks v. Central R.R. Co. of N.J., 129 N.J. Super. 145, 149, (App. Div. 1974) (determining a motion to correct the clerk's erroneous allowance of prejudgment interest was a clerical mistake), with Belfer v. Merling, 322 N.J. Super. 124, 137 (App. Div. 1999) (holding an error in a judgment attributable to a party's miscalculation in failing to raise a setoff or

recoupment issue does not constitute a clerical mistake and must be amended under Rule 4:50-1) and Heim v. Wolpaw, 271 N.J. Super. 538, 541 (App. Div. 1994) (concluding that there was no "clerical mistake" to be corrected under Rule 1:13-1 because "[t]he court acknowledged that it, not the clerk, had made a mistake by not making clear its intent to award prejudgment interest.").

The motion judge issued her dismissal order reversing her earlier decision two days before the adjourned return date of defendants' motions for reconsideration[5] and on the same day as we issued a stay. We have no way of discerning the hour we signed the stay order or the hour the motion judge signed the dismissal order. We presume the motion judge issued her order before we stayed the proceedings. The fact that plaintiffs had filed a motion for leave to appeal did not divest the motion judge of jurisdiction. See R. 2:5-6(a) ("The filing of a motion for leave to appeal shall not stay the proceedings in the trial court or agency except on motion made to the court or agency which entered the order or if denied by it, to the appellate court.").

---

[5] Defendants sought oral argument on this reconsideration motion only "in the event that this motion is opposed." Although plaintiffs intended to oppose defendants' motions for reconsideration, plaintiffs informed the motion judge by letter that due to the disqualification order, plaintiffs were unrepresented and thus unable to file opposition to the reconsideration motions. The trial court did not respond to plaintiffs' request for adjournment, and plaintiffs never filed opposition.

The motion judge's original order denying a dismissal was an interlocutory order. "It is well established that 'the trial court has the inherent power to be exercised in its sound discretion, to review, revise, reconsider and modify its interlocutory orders at any time prior to the entry of final judgment.'" Lombardi v. Masso, 207 N.J. 517, 534 (2011) (quoting Johnson v. Cyklop Strapping Corp., 220 N.J. Super. 250, 257 (App. Div. 1987)).

Thus, although we do not endorse that lack of consideration given plaintiffs in this unusual situation, we do not find the motion judge lacked authority to enter the order dismissing with prejudice.

## B. Due Process

Plaintiffs argue on appeal that they were denied due process because the motion judge sua sponte reversed her earlier orders without providing plaintiffs an opportunity to be heard and object, and furthermore because the motion judge took these measures while plaintiffs were without counsel because of the earlier disqualification order.

However, in Ledezma v. A & L Drywall, 254 N.J. Super. 613, 618-19 (App. Div. 1992), we stated that an amended sua sponte order was not a due process violation because the parties had been fully appraised of the issues before the trial court, had a full opportunity to be heard, and nothing new was

14                                                         A-1368-16T4

introduced into the record between the original decision and the modified decision. So too, the parties here had a full opportunity to address defendants' motions for dismissal with prejudice.

Similar to the situation in <u>Ledezma</u>, the motion judge amended her decision due to "misreading." <u>See</u> <u>id.</u> at 620. Therefore, although the motion judge incorrectly invoked <u>Rule</u> 1:13-1, plaintiffs were not denied due process.

## C. <u>Dismissal with prejudice</u>

Plaintiffs argue that the consent order remained a voluntary dismissal without prejudice at the time that plaintiffs re-filed the malpractice complaint in March 2016 because the court clerk did not affirmatively make an entry on the civil docket dismissing the initial malpractice action with prejudice. Plaintiffs cite to <u>Rule</u> 4:47(b) for the proposition that a judgment does not take effect until its entry on the civil docket. <u>See</u> Pressler &Verniero, cmt. 3 on <u>R.</u> 4:47.

In response, defendants argue that the consent order represented an agreement similar to a settlement agreement, and public policy in favor of settlement of litigation instructs that this matter be dismissed with prejudice according to the terms in the consent order, for which they cite <u>Dodd v. Copeland</u>, 99 N.J. Super. 481, 485 (App. Div. 1968) ("The general policy of the law is to encourage the good faith settlement of claims and thereby avoid or

terminate litigation.") and <u>Chattin v. Cape May Greene</u>, 216 N.J. Super. 618, 625 (App. Div. 1987). Defendants also argue that the language of the consent order makes clear that the dismissal is self-executing.

In <u>O'Loughlin v. National Community Bank</u>, 338 N.J. Super. 592, 596-97 (App. Div. 2001), the appellants argued that the trial court had erred in disallowing them to re-file a complaint beyond the time period provided in the consent order. There, the court found that the trial judge properly dismissed the action because it was subject to the consent order. <u>See</u> <u>id.</u> at 604. Additionally, the court in <u>O'Loughlin</u> noted that "[g]enerally, an order consented to by the attorneys for each party is not appealable," and that there was nothing to indicate that the "consent order entered was forced upon either side . . . ." <u>Id.</u> at 602.

Here, nothing in the consent order provides that any party must take affirmative action to convert the consent order from a dismissal without prejudice to a dismissal with prejudice. To the contrary, the consent order provides that a party must take affirmative action to extend the 360-day deadline, which no party did. Plaintiffs do not claim they were forced into the terms of the agreement. Therefore, consistent with the motion judge's decision, the consent order operated by its own terms to transform the dismissal without prejudice to one with prejudice.

A-1368-16T4

The word "shall" generally indicates mandatory terms. See, e.g., United States v. Monsanto, 491 U.S. 600, 607 (1989) ("Congress could not have chosen stronger words to express its intent that [statutory terms] be mandatory" than the word "shall"); Jersey Cent. Power & Light Co. v. Melcar Utility Co., 212 N.J. 576, 587-88 (2013) ("the Legislature's choice of the word 'shall,' . . . is ordinarily intended to be mandatory, not permissive."); State v. Bolvito, 217 N.J. 221, 230 (2014); In re State Bd. of Educ.'s Denial of Petition to Adopt Regulations Implementing N.J. High Sch. Voter Registration Law, 422 N.J. Super. 521, 532 (App. Div. 2011). "Shall" generally indicates a command that a party "is required to" carry out a directive. Black's Law Dictionary 1499 (9th ed. 2009). "This is the mandatory sense that drafters typically intend and that courts typically uphold." Ibid.

Plaintiffs argue as well that the conduct of the Borteck defendants, in reaching out to plaintiffs twice after the 360-day period inquiring as to the status of the underlying estate tax and beneficiary litigation, confirms that the parties intended that the matter be dismissed without prejudice. Plaintiffs rely on McDade v. Siazon, 208 N.J. 463, 480 (2011), for the contention that equitable estoppel may be invoked when there is "conduct, either express or implied, which reasonably misleads another to his prejudice so that a repudiation of such

conduct would be unjust in the eyes of the law." Ibid. (quoting Dambro v. Union Cnty. Park Comm'n, 130 N.J. Super. 450, 457 (Law Div. 1974)). Here, "[t]here is no indication in the record that plaintiffs relied to their detriment upon any representation or omission" of defendants. See McDade, 208 N.J. at 480.

Plaintiffs contend that because the statute of limitations has not run,[6] converting the consent order into a dismissal with prejudice would "result in a grave injustice to plaintiffs and an unintended windfall to defendants." Plaintiffs rely on Zaccardi v. Becker, 88 N.J. 245, 249-51 (1982), where the defendant doctors contended that the plaintiffs' medical malpractice claims against them were barred by the statute of limitations for failure to answer interrogatories. The Court concluded that because the defendants had adequate warning to prepare their defenses and the delays were attributable to attorneys on both sides, dismissal with prejudice was not mandated "because of the statute of limitations." Id. at 259.

Here, unlike in Zaccardi, plaintiffs signed a consent order that unambiguously laid out the time period, before a dismissal with prejudice, in which plaintiffs could re-file their claims or seek an extension. "Contract

---

[6] Plaintiffs assert that the six-year statute of limitations does not expire until 2018 because plaintiffs' claims did not accrue until they became aware of the beneficiary action in 2012. N.J.S.A. 2A:14-1.

provisions limiting the time parties may bring suit have been held to be enforceable, if reasonable." Eagle Fire Prot. Corp. v. First Indem. of Am. Ins. Co., 145 N.J. 345, 354 (1996). Plaintiffs do not argue the time frame was unreasonable.

Plaintiffs finally argue on appeal that pursuant to Rule 4:50-1(a), this court should relieve plaintiffs from the dismissal order for excusable neglect. Plaintiffs point to their efforts to "mitigate defendants' exposure" and put defendants "in the same (or better) position than they were when the consent order first went into effect as the potential damages have been drastically reduced by the efforts of plaintiffs." Plaintiffs argue that pursuant to Rule 4:50-1(f), the circumstances here are exceptional and enforcement of the dismissal order would be unjust.

Excusable neglect has been defined as "attributable to an honest mistake that is compatible with due diligence or reasonable prudence." Mancini v. EDS, 132 N.J. 330, 335 (1993); see also Baumann v. Marinaro, 95 N.J. 380, 394 (1984) (finding that "failure to file timely motions [was a] careless mistak[e] evidencing a lack of proper diligence.").

As the motion judge opined, plaintiffs offered "no reason for why they slept on their rights under the terms of the consent order." Plaintiffs agreed to

the consent order, and had the right to seek additional time under the order provided they filed the appropriate motion with the court prior to the 360-day time frame. Neither <u>Rule</u> 4:50-1(a) or (f) require the malpractice action to be reinstated because plaintiffs' failure to seek additional time for seven months was not excusable neglect; nor would enforcement of the dismissal order result in an injustice beyond that anticipated by an expressed deadline. <u>See</u> <u>Mancini</u>, 132 N.J. at 335; <u>R.</u> 4:50-1(a), (f).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION