32 A.3d 1122

MICHAEL MCDADE AND PAMELA MCDADE, PLAINTIFFS–APPELLANTS, v. RODOLFO SIAZON, AURORO SIAZON, COUNTY OF ATLANTIC, AND DEF CONTRACTOR, DEFENDANTS, AND EGG HARBOR TOWNSHIP MUNICIPAL UTILITY AUTHORITY, DEFENDANT–RESPONDENT.

Argued September 27, 2011—Decided December 22, 2011.

464

466

*Randolph C. Lafferty* argued the cause for appellants (*Young-blood Lafferty & Sampoli*, attorneys; *Mr. Lafferty* and *Rebecca C. Lafferty* on the brief).

*Howard N. Sobel* argued the cause for respondent (*Mr. Sobel* and *Margaret D. Nikolis* on the brief).

Justice PATTERSON delivered the opinion of the Court.

The New Jersey Tort Claims Act, *N.J.S.A.* 59:1–1 to 13–10, imposes strict requirements upon litigants seeking to file claims against public entities. Under *N.J.S.A.* 59:8–8, a claimant must file a notice of claim upon a public entity or public employee "not later than the ninetieth day after accrual of the cause of action." *N.J.S.A.* 59:8–8. The Legislature, however, has created a mechanism for obtaining discretionary relief from the strict ninety-day deadline; within one year after the accrual of the cause of action, *N.J.S.A.* 59:8–9 permits the filing of a motion for leave to file a late notice. This motion may be granted if the claimant has shown "sufficient reasons constituting extraordinary circumstances for his failure to file notice of claim" within the statutory period of ninety days, and "that the public entity or the public employee has not been substantially prejudiced thereby." *Ibid.*

The issue before the Court is whether a plaintiff who has failed to serve a timely notice of claim pursuant to *N.J.S.A.* 59:8–8, and has failed to file a motion for leave to file a late notice in accordance with *N.J.S.A.* 59:8–9, can pursue a claim against a public entity. Plaintiffs Michael McDade and Pamela McDade, intending to file an action for personal injury against the owner of a sewer pipe that allegedly injured Mr. McDade, served a tort claims notice upon a municipality that was not the owner of the pipe. They did not conduct an investigation to determine the actual owner, and were not advised of the true owner's identity until seven months after the claim accrued. Instead of obtaining leave of court to file a motion for leave to file a late tort claim notice pursuant to *N.J.S.A.* 59:8–9, plaintiffs served an untimely "amended" notice upon the public entity that owned the pipe,

followed seventeen months later by the filing of their complaint. The trial court denied defendants' summary judgment motion, invoking the discovery rule to hold that plaintiffs' claim had not accrued until they were advised of the identity of the pipe's owner. After granting leave to appeal, the Appellate Division reversed the denial of summary judgment, holding that the discovery rule did not toll the accrual of plaintiffs' claims in the absence of an order granting leave to file a notice of late claim under *N.J.S.A.* 59:8-9.

We now affirm. As the Appellate Division panel properly held, the discovery rule does not obviate the need to comply with the requirements of *N.J.S.A.* 59:8-8 and *N.J.S.A.* 59:8-9. Because plaintiffs declined to invoke the statutory procedure by which a court determines whether the late filing of a notice of claim can be excused, the defendant public entity is entitled to summary judgment.

## I.

During the evening of January 22, 2006, plaintiff Michael McDade was walking his dog on Canterbury Road in Egg Harbor Township, New Jersey. Plaintiffs allege that McDade "was caused to slip and/or trip and violently fall" over "a raised pipe protruding from the sidewalk," and that he suffered severe and permanent injuries to his right shoulder, right knee and right hand, requiring him to miss eight months of work. Although the accident took place on a public sidewalk owned by Egg Harbor Township (Township), the pipe alleged to have injured Mr. McDade was owned and controlled by the Egg Harbor Township Municipal Utility Authority (MUA). It is undisputed that the Township and the MUA are separate and distinct entities.

Plaintiffs retained counsel in this matter on March 27, 2006. On April 13, 2006, pursuant to *N.J.S.A.* 59:8-4, plaintiffs' counsel served a notice of claim, by certified mail, upon the Township, Atlantic County (County) and the State of New Jersey. In response to question 6 of the notice of claim form—which inquired, "Have you made a claim against anyone else for any of the losses

or expenses claimed in this notice?"—plaintiffs' April 13, 2006 notice of claim identified, in a handwritten notation, the following entities: "Twp of Egg Harbor, State of New Jersey & County of Atlantic." Plaintiffs did not identify the MUA.

On April 26, 2006, the claims administrator retained by the Township, Scibal Associates (Scibal), acknowledged receipt of plaintiffs' notice of claim. Plaintiffs served no notice of claim upon the MUA within the ninety-day period prescribed by *N.J.S.A.* 59:8–8(a). The record does not reflect any investigation by plaintiffs' counsel during that ninety-day period to determine the identity of the pipe's owner. After the expiration of the ninety-day statutory period, but within the one-year period to move for leave to file a late notice of claim pursuant to *N.J.S.A.* 59:8–9, Scibal sent to plaintiffs' counsel a letter dated August 17, 2006, stating in part:

> We have conducted and concluded our investigation of your claim. Our investigation has revealed that the pipe sticking out of the sidewalk was a sewer clean-out and is under the jurisdiction of the Egg Harbor MUA. Our Insured [the Township] has no jurisdiction over the ... MUA.

Plaintiffs received this letter on August 21, 2006. On the following day, represented by new counsel, plaintiff sent a letter by certified mail to the MUA providing in part:

> Enclosed please find a completed Tort Claims Notice. As you are aware your governing body was noticed of the incident on April 13, 2006 via certified mail. We learned on August 21, 2006 the injury was caused due to the negligence of a subsidiary of the governing body, the MUA. Accordingly, please consider this our formal amended Tort Claims Notice.

Enclosed with this letter was a copy of the April 13, 2006 notice of tort claim identical to the notice previously served upon the Township, and bearing the original date of that notice, except that the handwritten responses to questions 3d and 6 of the form had been amended to include "Egg Harbor Twp MUA" as a party against whom plaintiffs asserted a claim.

Scibal, designated by the MUA to serve as its claims administrator in this matter, wrote to plaintiffs' counsel on September 15, 2006, acknowledging receipt of plaintiffs' August 22, 2006 letter. Scibal noted that plaintiffs' counsel had represented in its letter

that "the Authority had previously been put on notice of this claim via certified mail dated 4/13/06." On the MUA's behalf, Scibal requested "a copy of the executed certified mail tag" for the service of the April 13, 2006 notice of claim upon the MUA, to which plaintiffs' August 22, 2006 letter had referred.

On November 20, 2006, still within the one-year period to move for leave to file a late notice of claim pursuant to *N.J.S.A.* 59:8–9, plaintiffs' counsel wrote to Scibal, setting forth a damages estimate and suggesting settlement discussions. Plaintiffs did not provide the requested proof that the MUA had been served by certified mail on April 13, 2006 with a Tort Claims Act notice of claim. Scibal acknowledged receipt of that letter on December 19, 2006, stating that it was still investigating the claim and that it would contact plaintiffs upon completion of its investigation. The one-year period to move for leave to file a late notice of claim expired on January 22, 2007. *N.J.S.A.* 59:8–9. On February 28, 2007, plaintiffs' counsel contacted Scibal, stating that plaintiffs intended to file suit against the MUA.

On January 7, 2008, almost two years after the accident, plaintiffs filed a complaint naming as defendants the homeowners of the property adjacent to the sidewalk on which the accident had occurred, the MUA, the County and fictitious defendants designated in accordance with *Rule* 4:26–4. The MUA moved for summary judgment, arguing that plaintiffs' notice of claim was not timely served as required by *N.J.S.A.* 59:8–8(a), and that plaintiffs had failed to file a motion for leave to file a late notice of claim pursuant to *N.J.S.A.* 59:8–9. The trial court denied the MUA's summary judgment motion, holding that the discovery rule tolled the accrual of plaintiffs' cause of action for purposes of the Tort Claims Act until August 21, 2006, when plaintiffs were made aware that the pipe at issue was the property of the MUA, and finding that defendants had not been prejudiced by the delay. Following the denial of its motion for summary judgment, the MUA pled in its answer plaintiffs' failure to timely file a notice of claim under

the Tort Claims Act, and to file a motion for leave to file a late notice of claim under *N.J.S.A.* 59:8–9.

The MUA filed a notice of appeal in the Appellate Division; because the trial court's order was interlocutory and the MUA failed to seek leave to appeal pursuant to *Rule* 2:5–6(a), the Appellate Division dismissed the appeal without prejudice. The MUA then filed a timely motion for leave to appeal the trial court's decision, which the Appellate Division granted.

In an unpublished opinion, the Appellate Division panel reversed the trial court's denial of the MUA's summary judgment motion. The panel held that in light of the failure of plaintiffs' prior counsel to conduct a diligent investigation to identify the owner of the pipe involved in the accident, and plaintiffs' failure to file a motion for leave to file a late notice of claim under *N.J.S.A.* 59:8–9, the discovery rule did not apply and therefore plaintiffs' tort claims notice was untimely. The Appellate Division panel reversed the trial court's determination and remanded for the entry of an order dismissing plaintiffs' claims against the MUA with prejudice.

We granted plaintiffs' petition for certification. *McDade v. Siazon*, 205 *N.J.* 80, 12 *A.*3d 212 (2011).

## II.

Plaintiffs invoke the discovery rule. They argue that their cause of action did not accrue until August 21, 2006, the date upon which their counsel learned that the MUA was the owner of the pipe at issue. Plaintiffs therefore contend that their August 22, 2006 tort claims notice to the MUA was timely. They urge the Court to defer to the trial court's "fact-specific" finding that it was reasonable for their former counsel to assume that the pipe belonged to the entity that owned the public right-of-way for the sidewalk on which the accident occurred. Plaintiffs further argue that the Appellate Division did not give sufficient weight to the MUA's failure to demonstrate that it was prejudiced by the trial court's application of the discovery rule. They also rely on the

principle of equitable estoppel, contending that "the interests of justice, morality and common fairness" preclude a finding that the Tort Claims Act notice of claim was untimely.

The MUA urges the Court to affirm the Appellate Division's judgment. It argues that a prompt investigation would have readily uncovered the identity of the pipe's owner, that plaintiffs' prior counsel took no action to ascertain the correct defendant, and that reasonable diligence must be shown before a party may invoke the discovery rule. The MUA discounts the significance of the lack of a showing of prejudice, arguing that the absence of prejudice alone does not salvage plaintiffs' claim. It contends that prejudice could, in any event, be demonstrated given the passage of eight months and changes in the conditions at the relevant site between the time of the accident and when the notice of claim was served on the MUA. The MUA contests plaintiffs' assertion of equitable estoppel, arguing that equitable estoppel applies to Tort Claims Act notice requirements only in limited circumstances not present here. Finally, the MUA contends that plaintiffs' invocation of equitable estoppel is barred by the doctrine of unclean hands, given plaintiffs' August 22, 2006 representation to the MUA that the MUA had been timely served with a notice of claim on April 13, 2006.

### III.

We consider an Appellate Division order reversing the trial court's grant of summary judgment, on a record in which the critical facts are not in dispute. When the legal conclusions of a trial court on a *Rule* 4:46–2 summary judgment decision are reviewed on appeal, " '[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference[,]' and, hence, an 'issue of law is subject to de novo plenary appellate review.' " *Estate of Hanges v. Metro. Prop. & Cas. Ins. Co.*, 202 *N.J.* 369, 382–83, 997 *A.*2d 954 (2010) (quoting *City of Atlantic City v. Trupos*, 201 *N.J.* 447, 463, 992 *A.*2d 762 (2010)); *see also Manalapan Realty v. Twp. Comm.*

*of Manalapan,* 140 *N.J.* 366, 378, 658 *A.*2d 1230 (1995) (noting that plenary review is proper when "the Appellate Division disagreed with some of the trial court's legal conclusions"). We accordingly conduct a *de novo* review.

The Legislature enacted the Tort Claims Act, *N.J.S.A.* 59:1–1 to 13–10, to afford circumscribed relief from the doctrine of sovereign immunity. It declared:

> The Legislature recognizes the inherently unfair and inequitable results which occur in the strict application of the traditional doctrine of sovereign immunity. On the other hand the Legislature recognizes that while a private entrepreneur may readily be held liable for negligence within the chosen ambit of his activity, the area within which government has the power to act for the public good is almost without limit and therefore government should not have the duty to do everything that might be done. Consequently, it is hereby declared to be the public policy of this State that public entities shall only be liable for their negligence within the limitations of this act and in accordance with the fair and uniform principles established herein.
>
> [*N.J.S.A.* 59:1–2.]

 In light of the Legislature's express intent, "[g]enerally, immunity for public entities is the rule and liability is the exception." *Fleuhr v. City of Cape May,* 159 *N.J.* 532, 539, 732 *A.*2d 1035 (1999). The Tort Claims Act is "strictly construed to permit lawsuits only where specifically delineated." *Gerber ex rel. Gerber v. Springfield Bd. of Educ.,* 328 *N.J.Super.* 24, 34, 744 *A.*2d 670 (App.Div.2000); *see also Polyard v. Terry,* 160 *N.J.Super.* 497, 506, 390 *A.*2d 653 (App.Div.1978), *aff'd,* 79 *N.J.* 547, 401 *A.*2d 532 (1979). The Tort Claims Act's notice requirements are an important component of the statutory scheme. *See N.J.S.A.* 59:8–8 and –9.

 The discovery rule, upon which the trial court relied, may affect the timeliness of a notice of claim in appropriate cases, by tolling the date of accrual for purposes of computing the ninety-day period set forth in *N.J.S.A.* 59:8–8(a).[1] *See, e.g., Lamb*

---

[1] The Legislature determined that "[a]ccrual shall mean the date on which the claim accrued and shall not be affected by the notice provisions contained herein." *N.J.S.A.* 59:8–1.

*v. Global Landfill Reclaiming,* 111 *N.J.* 134, 145, 543 *A.*2d 443 (1988). In *Beauchamp v. Amedio,* 164 *N.J.* 111, 751 *A.*2d 1047 (2000), this Court addressed the interplay between the discovery rule and the standard applied when a claimant has filed a motion for leave to file a late notice of claim under *N.J.S.A.* 59:8–9:

> The first task is always to determine when the claim accrued. The discovery rule is part and parcel of such an inquiry because it can toll the date of accrual. Once the date of accrual is ascertained, the next task is to determine whether a notice of claim was filed within ninety days. If not, the third task is to decide whether extraordinary circumstances exist justifying a late notice. Although occasionally the facts of a case may cut across those issues, they are entirely distinct.
>
> [*Beauchamp, supra,* 164 *N.J.* at 118–19, 751 *A.*2d 1047.]

The discovery rule tolls the commencement of the ninety-day notice period only "[u]ntil the existence of an injury (or, knowledge of the fact that a third party has caused it) is ascertained." *Id.* at 122, 751 *A.*2d 1047. The test for the application of the discovery rule is "whether the facts presented would alert a reasonable person, exercising ordinary diligence, that he or she was injured due to the fault of another." *Caravaggio v. D'Agostini,* 166 *N.J.* 237, 240, 765 *A.*2d 182 (2001); *see also Roa v. Roa,* 200 *N.J.* 555, 571, 985 *A.*2d 1225 (2010); *Lopez v. Swyer,* 62 *N.J.* 267, 273–74, 300 *A.*2d 563 (1973). In determining the timeliness of a Tort Claims Act notice of claim, the trial court's inquiry thus begins with the date upon which the claim accrues. *Beauchamp, supra,* 164 *N.J.* at 118–19, 751 *A.*2d 1047.

■ Following the date of accrual, the statutory scheme affords an intentionally short period in which the claimant must conduct an investigation and give notice to the correct public entity. *N.J.S.A.* 59:8–8(a) requires that a plaintiff seeking to file a claim against a public entity serve a notice of claim within ninety days of the accrual of the cause of action. That requirement is intended to achieve the Legislature's goals.

> Those goals are (1) "to allow the public entity at least six months for administrative review with the opportunity to settle meritorious claims prior to the bringing of suit"; (2) "to provide the public entity with prompt notification of a claim in order to adequately investigate the facts and prepare a defense"; (3) "to afford the public entity a chance to correct the conditions or practices which gave rise to the claim";

and (4) to inform the State "in advance as to the indebtedness or liability that it may be expected to meet."

[*Beauchamp, supra,* 164 *N.J.* at 121–22, 751 *A.*2d 1047 (quoting *Fuller v. Rutgers, The State University,* 154 *N.J.Super.* 420, 426, 381 *A.*2d 811 (App.Div.1977), *certif. denied,* 75 *N.J.* 610, 384 *A.*2d 840 (1978)) (citations omitted).]

Strict application of *N.J.S.A.* 59:8–8(a) thus furthers the legislative intent. Given the interplay between the notice procedure and the responsible public entity's opportunity to plan for potential liability and correct the underlying condition, the Legislature required that the notice of claim be filed directly with the specific local entity at issue. *N.J.S.A.* 59:8–7 ("A claim for injury or damages arising under this act against a local public entity shall be filed with *that* entity." (emphasis added)); *see also Feinberg v. State,* 265 *N.J.Super.* 218, 626 *A.*2d 75 (App.Div.1993), *rev'd on other grounds,* 137 *N.J.* 126, 644 *A.*2d 593 (1994).

██ Failure to meet the ninety-day deadline for service of a Tort Claims Act notice of claim ordinarily results in a severe penalty: "[t]he claimant shall be forever barred from recovering against [the] public entity." *N.J.S.A.* 59:8–8. However, the Legislature recognized that discretionary judicial relief from the ninety-day Tort Claims Act requirement may be necessary to ameliorate the consequence of a late filing in appropriate cases. *N.J.S.A.* 59:8–9 provides:

A claimant who fails to file notice of his claim within 90 days as provided in section 59:8–8 of this act, may, in the discretion of a judge of the Superior Court, be permitted to file such notice at any time within one year after the accrual of his claim provided that the public entity or the public employee has not been substantially prejudiced thereby. Application to the court for permission to file a late notice of claim shall be made upon motion supported by affidavits based upon personal knowledge of the affiant showing sufficient reasons constituting extraordinary circumstances for his failure to file notice of claim within the period of time prescribed by section 59:8–8 of this act or to file a motion to file a late notice of claim within a reasonable time thereafter; provided that in no event may any suit against a public entity or a public employee arising under this act be filed later than two years from the time of the accrual of the claim.

[*N.J.S.A.* 59:8–9.]

If such a motion is made, the grant or denial of remedial relief is "left to the sound discretion of the trial court, and will be

sustained on appeal in the absence of a showing of an abuse thereof." *Lamb, supra,* 111 *N.J.* at 146, 543 *A.*2d 443.

The Legislature imposed two standards for the grant of permission to file a late notice of claim: first, that there be a showing of "sufficient reasons constituting extraordinary circumstances" for the claimant's failure to timely file, and second, that the public entity not be "substantially prejudiced" thereby. *N.J.S.A.* 59:8–9. In a 1994 amendment to the statute, the Legislature replaced the previous standard requiring only " 'sufficient reasons' for the delay" with the "extraordinary circumstances" standard. *Lowe v. Zarghami,* 158 *N.J.* 606, 625–26, 731 *A.*2d 14 (1999). The Legislature intended to "raise the bar for the filing of late notice from a 'fairly permissive' standard to a 'more demanding' one." *Beauchamp, supra,* 164 *N.J.* at 118, 751 *A.*2d 1047 (quoting *Lowe, supra,* 158 *N.J.* at 625, 731 *A.*2d 14). The court's inquiry is fact-specific; it "leaves it for a case-by-case determination as to whether the reasons given rise to the level of 'extraordinary' on the facts presented." *Lowe, supra,* 158 *N.J.* at 626, 731 *A.*2d 14. The inquiry focuses on the reasonable diligence of the plaintiff in investigating the claim and determining the identity of the tortfeasor.

In a factual setting similar to that of the present case, this Court found that extraordinary circumstances did not exist when "an inspection of the area within a reasonable time following the accident would have led promptly to the identification of the public entity defendants that were responsible for installation and maintenance" of a valve involved in the plaintiff's accident. *Blank v. City of Elizabeth,* 162 *N.J.* 150, 151–52, 742 *A.*2d 540 (1999). Similarly, in *Leidy v. County of Ocean,* 398 *N.J.Super.* 449, 942 *A.*2d 112 (App.Div.2008), extraordinary circumstances were not found where "the record is barren of any reasonable efforts undertaken by plaintiff during the ninety-day period to ascertain ownership, control or operation" of the relevant portion of the roadway at issue. *Id.* at 461, 942 *A.*2d 112. The existence of a

reasonably prompt and thorough investigation is thus the crucial inquiry.

 Reflecting the Legislature's concern about the ability of public entities to promptly investigate and resolve claims and correct dangerous conditions, the second prong of the statutory test focuses the trial court on the issue of prejudice to the defendant. In determining the presence of substantial prejudice, "courts have generally focused on the entity's interest in expediting investigation with the hope of reaching nonjudicial settlement and its interest in protecting its access to current information about the alleged incident." *Lamb, supra,* 111 *N.J.* at 152, 543 *A.*2d 443; *see also id.* at 152–53, 543 *A.*2d 443 (no substantial prejudice was found for the filing of late notice of claim regarding landfill that was subject of widespread publicity, public hearings and extensive government records); *S.E.W. Friel Co. v. N.J. Tpk. Auth.,* 73 *N.J.* 107, 122, 373 *A.*2d 364 (1977) (no substantial prejudice was found for the filing of late notice of claim in which accident at issue involved sixty-six vehicles, nine deaths, thirty-seven injuries, extensive media coverage and federal and state investigations). Like the "extraordinary circumstances" prong of the statutory test, the "substantial prejudice" prong requires the trial court to conduct a fact-sensitive analysis of the specific case. *N.J.S.A.* 59:8–9 thus provides the framework for a court to balance the competing interests of fairness to diligent claimants and prompt notice to public entities.

## IV.

 In this case, the discovery rule does not delay the accrual of plaintiffs' claims. Plaintiffs knew on January 22, 2006, that plaintiff Michael McDade had been injured by the pipe, and that the owner of the pipe was potentially liable for that injury. The fact that plaintiffs were not immediately aware of the true identity of the pipe's owner does not alter the analysis. The discovery rule "provides that in an appropriate case a cause of action will be held not to accrue until the injured party discovers,

or by an exercise of reasonable diligence and intelligence should have discovered that he may have a basis for an actionable claim." *Lopez, supra,* 62 *N.J.* at 272, 300 *A.*2d 563. Plaintiffs did not act with the reasonable diligence required by the discovery rule. There is no indication that plaintiffs ever inspected the pipe to determine whether its owner could be identified, either by a designation on or near the pipe itself, or by confirming its function as a component of the MUA's waste treatment system. There is no evidence that plaintiffs searched the public record, inquired about the ownership of the pipe at municipal or MUA offices, or took any affirmative steps to determine the identity of the pipe's owner. Given plaintiffs' awareness of the injury, and their knowledge that the entity responsible for the pipe was a potential tortfeasor, the discovery rule does not toll the date of accrual of plaintiffs' cause of action. *See Viviano v. CBS,* 101 *N.J.* 538, 546–47, 503 *A.*2d 296 (1986); *Knauf v. Elias,* 327 *N.J.Super.* 119, 124–25, 742 *A.*2d 980 (App.Div.1999).

Plaintiffs' decision to forego the filing of a motion for leave to file a late notice of claim under *N.J.S.A.* 59:8–9 deprived the trial court of the opportunity to apply the legal standard prescribed by the Legislature for situations such as the one before us. The Tort Claims Act notice served upon the incorrect public entity—the Township—did not absolve plaintiffs of the obligation to promptly identify the pipe's owner and serve a timely notice of claim. *See Leidy, supra,* 398 *N.J.Super.* at 457, 942 *A.*2d 112 ("[P]laintiff cites as 'extraordinary circumstances' the fact that the County of Ocean never suggested 'another public entity was responsible for the roadway.' We do not view this circumstance under the present facts to be a sufficient, much less extraordinary, reason warranting relaxation of the time constraints of *N.J.S.A.* 59:8–8."). Had plaintiffs acknowledged that they had not served the appropriate entity, and filed a motion for leave to file a late notice of claim within the year-long period afforded by the statute, the trial court could have evaluated the circumstances of this case within the correct legal framework. With no motion under

N.J.S.A. 59:8–9 before it, however, the trial court incorrectly relied upon the discovery rule to deny the MUA's motion for summary judgment.

Finally, plaintiffs' reliance upon principles of equitable estoppel to excuse their failure to either serve a timely notice of claim, or to seek leave to file a late notice of claim, is misplaced. Equitable estoppel "is conduct, either express or implied, which reasonably misleads another to his prejudice so that a repudiation of such conduct would be unjust in the eyes of the law." *Dambro v. Union Cnty. Park Comm'n*, 130 *N.J.Super.* 450, 457, 327 *A.2d* 466 (Law Div.1974). The doctrine is "rarely invoked against a governmental entity.... Nonetheless equitable considerations are relevant to assessing governmental conduct, and may be invoked to prevent manifest injustice." *Cnty. of Morris v. Fauver*, 153 *N.J.* 80, 104, 707 *A.2d* 958 (1998) (quoting *O'Malley v. Dep't of Energy*, 109 *N.J.* 309, 316, 537 *A.2d* 647 (1987)). In rare cases, courts have invoked equitable estoppel to relax the requirements of the Tort Claims Act when the defendant has misled the plaintiff about a material issue. In *Hill v. Board of Education of the Township of Middletown*, 183 *N.J.Super.* 36, 443 *A.2d* 225 (App. Div.1982), for example, the Appellate Division relied upon the public entity defendant's decision to delay its assertion of tort claims defenses until long after the one-year period to file a motion under *N.J.S.A.* 59:8–9 had expired:

> Aside from defendant's failure to properly plead noncompliance with the notice provisions of the Tort Claims Act, it waited until over 2 1/2 years after the complaint was filed before bringing its motion for summary judgment. In the interim, defendant obtained complete discovery in the form of answers to interrogatories, depositions and a physical examination. Indeed, prior to the expiration of one year following the date of [the minor plaintiff] Kathleen Hill's 18th birthday, plaintiffs answered defendant's interrogatories and defendant obtained an order compelling more specific answers to its interrogatories. Certainly, defendant's conduct created the objective impression that it was waiving the notice requirements, especially in view of its failure to properly plead this defense.
>
> [*Id.* at 41, 443 *A.2d* 225.]

No such equitable considerations govern this case. There is no indication in the record that plaintiffs relied to their detriment upon any representation or omission by the MUA. Moreover, the

MUA promptly and consistently asserted plaintiffs' failure to comply with Tort Claims Act notice requirements, doing so in its summary judgment motion filed shortly after the inception of this case, and in its answer following the denial of that motion, as well as on appeal. It engaged in no conduct even remotely suggesting a waiver of its position with respect to *N.J.S.A.* 59:8–8(a) and –9. Equitable estoppel does not apply here.

## V.

The discovery rule does not toll the accrual of plaintiffs' claims. Plaintiffs did not comply with the statutory notice requirements of *N.J.S.A.* 59:8–8(a), and did not seek relief from those requirements under *N.J.S.A.* 59:8–9. Accordingly, we affirm the judgment of the Appellate Division.

*For affirmance*—Chief Justice RABNER, and Justices LONG, ALBIN, HOENS, PATTERSON and WEFING (temporarily assigned)—6.

*Not Participating*—JUSTICE LaVECCHIA—1.