**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1031-17T2

KEVIN BLACK,

     Plaintiff-Respondent,

v.

CITY OF JERSEY CITY,

     Defendant-Appellant,

and

COUNTY OF HUDSON and
STATE OF NEW JERSEY,

     Defendants.

_____

Argued October 24, 2018 – Decided November 8, 2018

Before Judges Ostrer and Currier.

On appeal from Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-4086-17.

Maura E. Connelly, Assistant Corporation Counsel, argued the cause for appellant (Jeremy Farrell,

Corporation Counsel, attorney; Maura E. Connelly, on the briefs).

Joseph M. Szesko argued the cause for respondent (Zavodnick, Perlmutter & Boccia, LLC, attorneys; Joseph M. Szesko, on the brief).

PER CURIAM

Defendant City of Jersey City appeals from the October 27, 2017 order permitting the late filing of a notice of claim under the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 to 59:12-3. Because plaintiff Kevin Black has not demonstrated extraordinary circumstances prevented him from filing his claim within the requisite period, we reverse.

In a notice of claim filed with defendant on September 12, 2017, plaintiff stated he tripped and fell on a defective curb in Jersey City on May 29, 2017. Plaintiff was transported to Jersey City Medical Center, complaining of right knee pain. Plaintiff reported he had injured his right knee two weeks earlier, on May 10, and was seen in the same emergency room where x-rays taken were negative. During the May 29 visit, plaintiff reported pain and swelling from walking. He denied any new injury. Plaintiff was diagnosed with "knee

effusion,"[1] given ibuprofen, advised to use crutches, and discharged to follow up with an orthopedic doctor. The record does not reflect any x-rays were performed on May 29.[2]

On June 19, 2017, plaintiff visited an orthopedic doctor. He reported he was on his way to the hospital for another procedure, three and a half weeks earlier, when he twisted his knee and fell directly onto it. The office note states, "Of note, the patient had a previous spinal fracture with right side footdrop and EHL weakness which was preexisting prior to this injury, and he says this footdrop is what caused his fall."

Plaintiff provided x-rays, taken by a different doctor that showed a displaced comminuted medial tibial plateau fracture. The orthopedist recommended a CT scan and likely surgery for the fracture. The doctor saw him again on August 28, 2017. Although he was still using crutches, the doctor noted

---

[1] Knee effusion is fluid in or around the knee. Taber's Medical Dictionary, https://www.unboundmedicine.com/medline/view/Tabers-Dictionary/750388/all/effusion (last accessed Oct. 29, 2018).

[2] For the purposes of our review, we use May 29 as the date of plaintiff's injury because the discrepancies in dates and onset of the injury were not addressed by the trial court or in the appellate briefs.

A-1031-17T2

plaintiff was weightbearing on the leg. Knee replacement surgery was recommended.

Plaintiff retained legal counsel on September 11, 2017, and filed a notice of claim against defendant and other entities the following day. Defendant denied the claim as untimely under N.J.S.A. 59:8-8. Thereafter, plaintiff moved for leave to file a late notice of tort claim, N.J.S.A. 59:8-9, arguing extraordinary circumstances prevented him from pursuing a personal injury action, and the late claim did not prejudice defendant.

In an October 27, 2017 order, the motion judge granted plaintiff's application, permitting the late notice of claim. The judge found plaintiff's "substantial lack of mobility" satisfied the extraordinary circumstances necessary to allow an untimely filing. He also found defendant was not unduly prejudiced. The motion judge provided an oral amplification of his reasoning pursuant to Rule 2:5-1(b) on November 17, 2017. The judge found plaintiff had established extraordinary circumstances in his certification, which stated that except for medical care and treatment, plaintiff was confined to his apartment after the injury.

Defendant argues on appeal that plaintiff's knee injury did not qualify as an "extraordinary circumstance" under N.J.S.A. 59:8-9 to permit a late filing of

A-1031-17T2

notice of claim.  We are mindful that a grant of permission to file a late tort claim notice is left to the sound discretion of the trial court and will be sustained on appeal absent the showing of an abuse thereof.  McDade v. Siazon, 208 N.J. 463, 476-77 (2011) (citing Lamb v. Global Landfill Reclaiming, 111 N.J. 134, 146 (1988)).  "Although deference will ordinarily be given to the factual findings that undergird the trial court's decision, the court's conclusions will be overturned if they were reached under a misconception of the law."  D.D. v. Univ. of Med. & Dentistry of N.J., 213 N.J. 130, 147 (2013) (citing McDade, 208 N.J. at 473-74).

N.J.S.A. 59:8-8 requires a plaintiff to file a notice of claim upon a public entity "not later than the ninetieth day after accrual of the cause of action." McDade, 208 N.J. at 468 (quoting N.J.S.A. 59:8-8).  The failure to serve a notice of claim within the statutory ninety-day period results in a bar against the claim and recovery.  Id. at 476; N.J.S.A. 59:8-8.

In limited circumstances, relief can be afforded under N.J.S.A. 59:8-9, which allows a plaintiff to move for leave to file a late notice "within one year after the accrual of the cause of action."  McDade, 208 N.J. at 476.  The trial court may grant the motion if there are "'sufficient reasons constituting extraordinary circumstances' for the claimant's failure to timely file" a notice of

claim within the statutory ninety-day period, and if "the public entity [is not] 'substantially prejudiced' thereby." Id. at 477 (quoting N.J.S.A. 59:8-9). Determining "extraordinary circumstances" and substantial prejudice requires a "trial court to conduct a fact-sensitive analysis of the specific case." Id. at 478.

The Legislature intended the "extraordinary circumstances" required for a late filing of claim notice to be a demanding standard. See D.D., 213 N.J. at 148 (citing Lowe v. Zarghami, 158 N.J. 606, 625-26 (1999)). We have looked to the "severity of the medical condition and the consequential impact" on the claimant's ability to seek redress and pursue a claim. D.D., 213 N.J. at 150. See, e.g., Mendez v. S. Jersey Transp. Auth., 416 N.J. Super. 525, 533-35 (App. Div. 2010) (determining the plaintiff's injuries and memory loss sustained in motor vehicle accident that required weeks of hospitalization qualified as an extraordinary circumstance); Maher v. Cty. of Mercer, 384 N.J. Super. 182, 189-90 (App. Div. 2006) (finding extraordinary circumstances where the medical condition of a plaintiff, who contracted staph infection, was so severe that she was treated by an induced coma and not expected to survive); R.L. v. State Operated Sch. Dist., 387 N.J. Super. 331, 340-41 (App. Div. 2006) (finding extraordinary circumstances where a high school student, who contracted HIV

A-1031-17T2

infection from a sexual relationship with his teacher, was preoccupied with thoughts of death).

In contrast to the above-demonstrated extraordinary circumstances, plaintiff has not shown his medical condition was so "severe, debilitating or uncommon" to prevent him from contacting an attorney and pursuing a claim. D.D., 213 N.J. at 150. He was able to leave his home as evidenced by visits to several doctors for knee pain and the hospital for an MRI, as well as his regular appointments for diabetes checks and treatment. Plaintiff was not bedridden, confined to a hospital, or under a mental impairment. Although we do not doubt plaintiff's injury was painful, his circumstances do not meet the required high threshold. His conduct in the ninety days following the incident confirms he could have visited an attorney's office, or contacted an attorney from his home. See O'Neil v. City of Newark, 304 N.J. Super. 543, 553-54 (1997).

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1031-17T2