**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2492-16T4

K.B.,[1]

      Plaintiff-Appellant,

v.

CITY OF NEWARK,

      Defendant-Respondent,

and

NEWARK POLICE DEPARTMENT
a/k/a CITY OF NEWARK DEPARTMENT
OF PUBLIC SAFETY POLICE DIVISION,
and K.G.,

      Defendants.

_____

      Argued October 15, 2018 – Decided  November 30, 2018

      Before Judges Messano, Fasciale and Rose.

      On appeal from Superior Court of New Jersey, Law Division, Essex County, Docket No. L-8043-16.

---

[1]  We use initials to protect the privacy of K.B.

Samuel A. Anyan, Jr., argued the cause for appellant (Wapner, Newman, Wigrizer, Brecher & Miller, PC, attorneys; Samuel A. Anyan, Jr., on the briefs).

Gary S. Lipshutz, Assistant Corporation Counsel, argued the cause for respondent City of Newark (Kenyatta K. Stewart, Acting Corporation Counsel, attorney; Handel T. Destinvil, Assistant Corporation Counsel, on the brief).

PER CURIAM

Plaintiff K.B. appeals from a January 6, 2017 Law Division order denying her motion for leave to file a late notice of tort claim against defendant City of Newark.[2] For the reasons that follow, we reverse.

We derive the pertinent facts from the motion record. On November 29, 2015, while plaintiff was working as a confidential informant (CI) for defendant police department, she was locked in an office of a Newark police precinct by then Detective K.G., who forced her to perform oral sex. K.G. told plaintiff, "If you don't suck my penis I am going to fuck your life up." Plaintiff reported the incident to the Internal Affairs Department (IAD). The sexual assault was video

---

[2] Co-defendant Newark Police Department a/k/a City of Newark Department of Public Safety Police Division was improperly pled and, as such, did not participate in this appeal. Co-defendant K.G. did not respond to the appeal.

recorded on a camera stationed in the office. Thereafter, K.G. was arrested and charged with sexual assault and coercion.

In support of her motion, plaintiff filed an affidavit, claiming IAD investigators assured her "that any potential civil or criminal claims arising from the incident would be taken care of without any action needed on [her] part." Believing the IAD was handling her claims, plaintiff did not seek legal representation or contact "any other public entities." She also feared that further discussions would lead to disclosure of her identity to the media and the public. Plaintiff included news articles, dated May 4, 2016, regarding K.G.'s arrest as exhibits to her motion.

Shortly after the ninety-day notice of claim filing period expired, plaintiff was imprisoned from March 11, 2016 to August 18, 2016. According to plaintiff's affidavit, "Upon [her] release from incarceration, [she] attempted to seek information regarding [her] civil complaints against . . . defendants[, but her] requests for information were ignored." In September 2016, plaintiff retained counsel who "informed [her] of the [n]otice of [c]aim process."

As further support for her motion, plaintiff included a five-page written report of David Salvage, M.D., F.A.P.M. Following his forensic psychiatric examination of plaintiff on November 10, 2016, Dr. Salvage opined:

3

[Plaintiff]'s psychiatric condition is consistent with a diagnosis of [PTSD] which is a direct result of the sexual trauma which she endured while working for the police department. She experiences an admixture of symptoms which include aspects of intrusive thoughts, avoidance of situations that trigger recollections of the event, negative alt[e]rations in her cognition and mood, and alterations in her level of arousal and reactivity. The trauma has had a significant impact on her life, particularly in the area of her marriage, social, and occupational functioning. She displays a significant decrease in her global level of functioning. Because this trauma occurred in her workplace, this has created a significant additional level of complexity – because although she would like to return to work, her workplace is a strong trigger for anxiety because it is precisely the place where the trauma occurred. She experiences a strong sense of conflict and cognitive dissonance, because as she herself worded this succinctly, "The police are supposed to protect you and keep you safe. And that's why I became an informant. But the opposite happened here."

On November 23, 2016, plaintiff moved for leave to file a late tort claim notice, which defendant opposed. Although plaintiff requested oral argument if the motion was opposed, the trial court decided the motion "on the papers." At the bottom of the order, the court affixed the following handwritten statement:

Plaintiff has failed to meet [her] burden of showing extraordinary circumstances pursuant to N.J.S.A. 59:8-9. See D.D. v. [Univ. of Med. & Dentistry of N.J.], 213 N.J. 130 (2013).

This appeal ensued.

4

On appeal, plaintiff claims the trial court erred by failing to consider the "collective impact" of the reasons underlying the delay in filing a notice of claim, i.e., her reliance on IAD investigator's representations, "prolonged incarceration," and "severe mental distress."[3]  Although not briefed as a point heading, plaintiff indicates the court denied her request for oral argument.

Pursuant to N.J.S.A. 59:8-8, claims for damages against public entities must be filed within ninety days of their accrual.  Beauchamp v. Amedio, 164 N.J. 111, 116 (2000) (discussing the procedural requirements of the Tort Claims Act, N.J.S.A. 59:1-1 to 12-3).  Although the period for filing is short, any harshness is alleviated by N.J.S.A. 59:8-9, which permits the filing of late claims.  Rogers v. Cape May Cty. Office of the Pub. Def., 208 N.J. 414, 420 (2011).  Leave to file a late notice of claim may be granted within one year of the accrual of the action upon a showing of "sufficient reasons constituting extraordinary circumstances" for the plaintiff's failure to file a timely notice of claim, as long as the public entity is not "substantially prejudiced."  N.J.S.A. 59:8-9.

---

[3] Plaintiff also contends defendant was not substantially prejudiced by her late notice because the incident received extensive media coverage.  Defendant concedes, for purposes of this motion, that it did not suffer substantial prejudice.

A-2492-16T4

The statutory framework governing the "extraordinary circumstances" exception to the ninety-day requirement has been extensively and definitively detailed elsewhere, and need not be repeated here. See, e.g., D.D., 213 N.J. at 146-49. Ordinarily, the decision to grant permission is one "left to the sound discretion of the trial court, and will be sustained on appeal in the absence of a showing of an abuse thereof." Mendez v. S. Jersey Transp. Auth., 416 N.J. Super. 525, 532-33 (App. Div. 2010); see also D.D., 213 N.J. at 147. "Although deference will ordinarily be given to the factual findings that undergird the trial court's decision, the court's conclusions will be overturned if they were reached under a misconception of the law." D.D., 213 N.J. at 147; see also McDade v. Siazon, 208 N.J. 463, 473-74 (2011).

Decisions denying an application to file a late claim are "examine[d] more carefully . . . to the end that wherever possible cases may be heard on their merits, and any doubts which may exist should be resolved in favor of [permitting] the application." Lowe v. Zarghami, 158 N.J. 606, 629 (1999) (internal quotation marks omitted). In making that determination, all of the circumstances in combination are to be considered. See ibid.

Because the trial court's terse statement affixed to its order denying plaintiff's motion is devoid of any factual findings, we cannot accord our usual

deference in the present case. See R. 1:7-4(a) (requiring that a trial court, "by an opinion or memorandum decision, either written or oral, find the facts and state its conclusions of law . . . on every motion decided by a written order that is appealable as of right"). A trial court "must state clearly [its] factual findings and correlate them with relevant legal conclusions, so that parties and the appellate courts [are] informed of the rationale underlying th[ose] conclusion[s]." Avelino-Catabran v. Catabran, 445 N.J. Super. 574, 594-95 (App. Div. 2016) (alterations in original).

Moreover, our review of the record does not support the trial court's cursory legal conclusion that plaintiff failed to satisfy her burden of demonstrating extraordinary circumstances pursuant to N.J.S.A. 59:8-9 and D.D.[4]

In D.D., the Court held than an attorney's neglect in filing a timely notice of claim, coupled with the plaintiff's non-debilitating medical symptoms,

_____

[4] Although not argued by plaintiff, we find the trial court also erred in failing to hold oral argument. Raspantini v. Arocho, 364 N.J. Super. 528, 531-34 (App. Div. 2003) (where a request for oral argument on a substantive motion is properly made, denial, absent articulation of specific reasons for denial on the record, constitutes reversible error); see also R. 1:6-2(d) (Civil Part motions must be listed for oral argument if "a party requests oral argument in the moving papers."); Great Atl. & Pac. Tea, Inc. v. Checchio, 335 N.J. Super. 495, 497-98 (App. Div. 2000) (a request for oral argument by a party is required to be granted as of right).

following the unauthorized release of her medical information by the defendant public entity, did not constitute extraordinary circumstances pursuant to N.J.S.A. 59:8-9. 213 N.J. at 150-51. The Court determined that to qualify as extraordinary, medical conditions must be "severe or debilitating" and have a "consequential impact on the claimant's very ability to pursue redress and attend to the filing of a claim." Id. at 149-50. A brief note from the plaintiff's doctor that neither attested to the severe or debilitating nature of plaintiff's condition, nor tied that condition to the statutory ninety-day filing period, was insufficient to support a finding of extraordinary circumstances. Id. at 151.

Unlike the plaintiff in D.D., here we conclude the combination of plaintiff's circumstances constitutes extraordinary circumstances. See Lowe, 158 N.J. at 629. Initially, plaintiff certified that during the operative ninety-day period, she relied on the representations of IAD investigators that criminal and civil actions would be filed against K.G., without "any action" from her. Indeed, that representation was partly satisfied when K.G. was arrested and charged criminally during plaintiff's five-month incarceration. However, upon her release from imprisonment, plaintiff's attempts to determine the status of the IAD's representations regarding her civil claims were ignored. Within one month, she retained counsel who, in turn, promptly retained Dr. Salvage.

A-2492-16T4

Further, unlike the plaintiff in <u>D.D.</u>, the severity of plaintiff's condition is set forth at length in Dr. Salvage's comprehensive report. Although not explicitly stated, when objectively viewed, Dr. Salvage's report supports plaintiff's willingness to rely on IAD's representations, and her "significant fear that discussion of the claims with any other entities or representatives would result in the media and public finding out her identity." Indeed, the very nature of the sexual assault crime here, and the psychological ramifications that flow therefrom, underscore Dr. Salvage's opinion that plaintiff "avoid[s] . . . situations that trigger recollections of the event." <u>See</u> <u>R.L. v. State-Operated School Dist.</u>, 387 N.J. Super. 331, 340-41 (App. Div. 2006) (meeting the extraordinary circumstances test where a high school student was preoccupied with thoughts of death after learning he contracted HIV infection from a sexual relationship with his teacher).

For the foregoing reasons, we find the trial court's legal conclusion is unsupported by the record. <u>D.D.</u>, 213 N.J. at 147; <u>McDade</u>, 208 N.J. at 473-74. We therefore conclude that, in this unique case, exceptional circumstances warrant the filing of a late tort claim notice.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

9