**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5316-17T2

ESTATE OF AUSTIN SILER,
deceased, JENNIFER
ALBRECHT-SILER, and
SHANE SILER, individually,

     Plaintiffs-Appellants,

v.

COUNTY OF OCEAN, OCEAN
COUNTY PROSECUTOR'S
OFFICE, STATE OF NEW
JERSEY, TOWNSHIP OF
BRICK, and BRICK TOWNSHIP
POLICE DEPARTMENT,

     Defendants-Respondents.

_____

Argued April 3, 2019 – Decided May 21, 2019

Before Judges Koblitz, Currier, and Mayer.

On appeal from Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-0686-18.

Michael K. Belostock argued the cause for appellants (Aloia Law Firm, LLC, attorneys; Brian J. Aloia, on the briefs).

Mathew B. Thompson argued the cause for respondent County of Ocean and Ocean County Prosecutor's Office (Berry Sahradnik Kotzas & Benson, attorneys; Mathew B. Thompson, on the brief).

Kevin N. Starkey argued the cause for respondents Township of Brick and Brick Township Police Department (Starkey, Kelly, Kenneally, Cunningham & Turnbach, attorneys; Kevin N. Starkey, on the brief).

Brett J. Haroldson, Deputy Attorney General, argued the cause for respondent State of New Jersey (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Brett J. Haroldson, on the brief).

PER CURIAM

Plaintiffs[1] appeal the May 17, 2018 order denying their motion for leave to file a late notice of tort claim (NOC) under the New Jersey Tort Claims Act (TCA), N.J.S.A. 59:1–1 to 12–3, and the June 28, 2018 order denying their motion for reconsideration. Because plaintiffs did not demonstrate extraordinary circumstances justifying the late filing of the NOC, we affirm.

On August 3, 2017, nineteen-year-old Austin was staying with friends in Brick Township, New Jersey following a funeral service for his former youth football coach. That evening, Austin and his friends went to the boardwalk and

---

[1] Plaintiffs Jennifer Albrecht-Siler and Shane Siler are the parents of decedent Austin Siler. We use their first names for clarity and also refer to them collectively as "plaintiffs."

then returned to one of the young men's homes (Brick residence) just before midnight. For the next several hours they remained on the deck of the Brick residence, where Austin consumed large quantities of multiple types of liquor and beer. Austin became inebriated and was vomiting and incontinent.

At 2:53 a.m., one of Austin's friends made a video showing him sleeping or unconscious in a chair on the deck. As the narrator is describing for Austin the events that led to his inebriation, there is a noise resembling the locking or unlocking of a vehicle. The camera moved toward the noise and a white light can be seen. The narrator exclaims, "Cops are here. Fuck." The video abruptly ends.

In statements made during the investigation of Austin's death, the friends stated they carried Austin inside the home at approximately 4:00 a.m., where they cleaned him up and put him on the couch. They did not mention the police coming to the Brick residence.

When the young men woke up later that morning, they noticed Austin "did not look good" and they drove him to the hospital, arriving at 7:30 a.m. Austin was pronounced dead forty-five minutes later.

During the ensuing investigation into Austin's death by defendants Ocean County Prosecutor's Office and Brick Township Police, they obtained Austin's

3

cell phone and searched its contents. When the phone was released to Jennifer a day or two after Austin's death,[2] the prosecutor's office advised her there were text messages on the phone pertaining to the events leading to her son's death.

When Jennifer turned on her son's phone, a text message appeared on the "home screen" from Austin's friend, telling him what had occurred after he passed out and the actions his friends had taken, such as cleaning him up and putting him on the couch. After reading the text message on the phone, Jennifer met with counsel, who reviewed the message in her presence. Two weeks later, Jennifer retained counsel and his firm to represent plaintiffs in a wrongful death action. Counsel contends the prosecutor's office requested he refrain from filing a civil suit until the criminal investigation was completed. That investigation concluded on November 15, 2017. No criminal charges were filed.

Plaintiffs' counsel filed an Open Public Records Act (OPRA) request under N.J.S.A. 47:1A–1 to –13. In response, he received over 500 pages of investigatory materials from Brick Township and Ocean County law enforcement offices. There was no reference in any of the records of any law

---

[2] The motion judge determined the phone was returned on either August 5 or 6, 2017.

enforcement personnel responding to the Brick residence in the early morning hours of August 4, 2017.

In preparing the wrongful death action complaint on January 25, 2018, plaintiffs' counsel requested Jennifer provide him with a copy of the particular text message they had previously reviewed on Austin's phone. When Jennifer looked again at the message on the phone, she stated she noticed for the first time "there was also a video." One of the friends had sent Austin the video by text on August 4, 2017 at 8:33 a.m. It was directly below the text message Jennifer and counsel had reviewed in August. Jennifer did not watch the video, but sent it along with the text message to her counsel.

Plaintiffs' counsel certified that when he watched the video on January 25, 2018, he "became aware of the possibility that a law enforcement officer may have responded to [the Brick residence] at approximately 2:53 a.m." on August 4, 2017. If a law enforcement officer had witnessed Austin intoxicated "to [a] point near death," counsel believed that could expose the police department to liability. As a result, he served NOCs on all defendants[3] the following day.

---

[3] Collectively, the defendants are: the County of Ocean, Ocean County Prosecutor's Office, State of New Jersey, Township of Brick, and Brick Township Police Department.

After Ocean County's claim administrator denied plaintiffs' claim as untimely, counsel filed a motion for leave to file a late NOC under N.J.S.A. 59:8–9. During oral argument on the motion, plaintiffs' counsel asserted he had diligently investigated the claim, and reviewed over 500 pages of records, including photos and videos of Austin arriving at the hospital. The voluminous materials did not mention any law enforcement involvement in the early hours before Austin's death. Ocean County counsel acknowledged the diligent investigation by plaintiffs' counsel, but also noted Jennifer had possessed Austin's phone containing the video and text message from "day one."[4]

In a written decision and order issued May 17, 2018, the motion judge determined plaintiffs' claim accrued on the day of Austin's death – August 4, 2017. Therefore, the NOC had to be served by November 2, 2017, to comply with the TCA's ninety-day statutory deadline. See N.J.S.A. 59:8–8.

Because the NOCs were untimely, the judge stated plaintiffs were required to demonstrate "extraordinary circumstances" prevented the filing within the statutory period. He noted that plaintiffs had to show "[t]he existence of a

---

[4] The Ocean County Prosecutor's Office also opposed the motion. Defendants Township of Brick and the State of New Jersey joined in the opposition, but did not file their own papers.

reasonably prompt and thorough investigation" in order to establish "extraordinary circumstances."[5] In analyzing the presented facts, the judge found law enforcement had returned Austin's cellphone to Jennifer before she met with counsel on August 6, 2017. At that meeting, Jennifer and counsel reviewed the phone together. Thereafter, Jennifer had possession and remained in possession of Austin's phone for the next ninety days. As a result, the judge denied plaintiffs' motion for leave to file a late NOC because "[t]he video was discoverable upon a reasonably prompt, diligent and thorough investigation of the entire contents of the phone that was in [Jennifer's] possession during the ninety-day statutory window."

Plaintiffs subsequently moved for reconsideration, contending: 1) the judge "overlooked [p]laintiffs' reasonable diligence in investigating the claims and determining the identity of the tortfeasors;" 2) the judge failed to consider controlling case law establishing the "extraordinary circumstances" standard; and 3) the accrual date should have been tolled until November 15, 2018. The trial judge denied this motion on June 28, 2018, reasoning that plaintiffs failed "to demonstrate that the [c]ourt's decision on May 17, 2018 was 'based upon a

---

[5] McDade v. Siazon, 208 N.J. 463, 478 (2011).

palpably incorrect or irrational basis or that this [c]ourt either did not consider, or failed to appreciate the significance of the probative, competent evidence.'"[6]

On appeal, plaintiffs renew their arguments that they demonstrated extraordinary circumstances sufficient to permit a late filing of the NOC and that the cause of action against defendants did not accrue until law enforcement authorities had completed the criminal investigation.

We review an order granting or denying a motion for leave to file a late NOC under the TCA for an abuse of discretion.  See D.D. v. Univ. of Med. & Dentistry of N.J., 213 N.J. 130, 147 (2013); see also O'Donnell v. N.J. Tpk. Auth., 236 N.J. 335, 344 (2019) (noting N.J.S.A. 59:8–9 leaves the determination of whether a late notice may be filed to "the discretion of a judge of the Superior Court").

The denial of a motion for reconsideration rests within the sound discretion of the trial court.  Fusco v. Bd. of Educ. of City of Newark, 349 N.J. Super. 455, 462 (App. Div. 2002).

The TCA provides "broad but not absolute immunity for all public entities." Jones v. Morey's Pier, Inc., 230 N.J. 142, 154 (2017) (quoting Marcinczyk v. N.J. Police Training Comm'n, 203 N.J. 586, 597 (2010)).  The TCA's "guiding principle"

---

[6]  See D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990).

is that "immunity from tort liability is the general rule and liability is the exception." Ibid. (quoting D.D., 213 N.J. at 134).

To accomplish this goal, the TCA "imposes strict requirements upon litigants seeking to file claims against public entities." McDade, 208 N.J. at 468. N.J.S.A. 59:8–3 prescribes, "[n]o action shall be brought against a public entity or public employee under this act unless the claim upon which it is based shall have been presented" to the appropriate public entity in a written NOC. See also N.J.S.A. 59:8–4 to –7. "A claim relating to a cause of action for death . . . shall be presented . . . [no] later than the [ninetieth] day after accrual of the cause of action." N.J.S.A. 59:8–8.

If a plaintiff misses the statutory ninety-day deadline, a NOC may still be filed up to a year after the claim accrues, but only if "extraordinary circumstances" excuse the delay and the public entity or employee would not be "substantially prejudiced." Lowe v. Zarghami, 158 N.J. 606, 624–25 (1999); see also O'Donnell, 236 N.J. at 345–46. "The phrase 'extraordinary circumstances' was added to the statute in 1994" to "raise the bar for the filing of late notice from a 'fairly permissive standard' to a 'more demanding' one." Beauchamp v. Amedio, 164 N.J. 111, 118 (2000) (quoting Lowe, 158 N.J. at 625). The TCA, however, does not define "extraordinary circumstances," and

courts must determine, on a case-by-case basis, whether such "extraordinary circumstances" exist based on the facts and context presented. Lowe, 158 N.J. at 626.

As the motion judge noted, a court must "focus[] on the reasonable diligence of the plaintiff in investigating the claim and determining the identity of the tortfeasor." McDade, 208 N.J. at 477. Plaintiffs assert they were diligent and point to the request for and review of the voluminous investigation records. We cannot disagree that counsel was diligently representing plaintiffs in pursuit of the wrongful death claim. However, the factual information regarding a different cause of action – the potential liability of law enforcement – was immediately available to them as the phone containing that information was in their possession a day or two after Austin's death.

Law enforcement informed Jennifer there was information on Austin's phone regarding the events leading to Austin's death. Jennifer looked at the text messages. She then met with counsel two days after her son's death and showed him the text message sent on August 4, 2017 at 8:27 a.m. That message, sent from one of the friends, contains details about the early morning hours, and the actions the young men took regarding Austin. The video is the next message, marked as "received" at 8:33 a.m.

Because plaintiffs were always in possession of the phone containing information that might have led to an additional cause of action, they cannot demonstrate extraordinary circumstances. A reasonable person exercising ordinary diligence would have watched the video after reading the text messages. The video was clearly discoverable within the statutory period.

Plaintiffs also contend the claim did not accrue until November 15, 2017, the day they were informed of the conclusion of the criminal investigation. Counsel argues the prosecutor's office instructed him not to conduct a civil investigation or to file a civil action until the completion of the criminal investigation. However, it was not an investigation to review the video on the cellphone. In fact, counsel had already looked at the text messages.

Furthermore, filing a NOC is different from filing a civil lawsuit. The notice requirement is intended to "expedite [an] investigation with the hope of reaching a nonjudicial settlement and to allow the public entity prompt access to information about the claim so that it may prepare a defense." Escalante v. Twp. of Cinnaminson, Cinnaminson Mem'l Park, 283 N.J. Super. 244, 249 (App. Div. 1995) (quoting Pilonero v. Twp. of Old Bridge, 236 N.J. Super. 529, 533 (App. Div. 1989)). A plaintiff must wait six months after the service of the NOC to file a suit. N.J.S.A. 59:8–8. The cause of action here accrued on either the

11

day of Austin's death or the day or two later when Jennifer received her son's phone. As the video was plainly visible to Jennifer and counsel within two days of Austin's death, there are no grounds for invoking the discovery rule and tolling the statutory period.

For the reasons stated, we are satisfied the judge did not abuse his discretion in denying plaintiffs' motions for leave to file a late NOC and reconsideration.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5316-17T2